## COMMONWEALTH vs. RUFINO MONTANEZ.

Middlesex. February 7, 1991. - May 30, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Controlled Substances. Practice, Criminal,* Assistance of counsel, New trial, Appeal, Severance, Required finding. *Constitutional Law,* Assistance of counsel, Search and seizure. *Search and Seizure,* Affidavit, Standing to object, Expectation of privacy. *Evidence,* Consciousness of guilt.

A criminal defendant's appeal from the denial of his motion for a new trial based on a claim of ineffective assistance of counsel by reason of counsel's alleged failure to investigate was not timely filed; moreover, the record did not support the defendant's claim that he was thereby deprived of an "otherwise available, substantial ground of defence." [294-297]

A criminal defendant's appeal from the denial of his motion for a new trial based on a claim of ineffective assistance of counsel by reason of counsel's failure to seek suppression of certain evidence was not timely filed; moreover, the defendant did not demonstrate any prejudice from the admission of the evidence at trial. [297-298]

A criminal defendant seeking a new trial on the ground of ineffective assistance of counsel demonstrated that he was prejudiced by his trial counsel's failure to present mitigating factors at sentencing and to request concurrent sentences; however, where the defendant's motion for new trial was not timely filed, this claim, raised for the first time on appeal, was time-barred, and the defendant's remedy was a motion under Mass. R. Crim. P. 30 (b) for a new trial or resentencing. [298-299]

An affidavit in support of an application for a search warrant, relying in part on personal observations supplied by credible confidential informants, set forth ample facts to support the magistrate's finding of probable cause to search the defendant's apartment. [299-300]

A criminal defendant did not have a reasonable expectation of privacy in the space above the dropped ceiling in the public common hallway outside his apartment, with the result that police officers who looked in that area were not conducting a search in the constitutional sense. [300-303]

The judge in a criminal case properly denied the defendant's motion, under Mass. R. Crim. P. 9, to sever a drug distribution indictment from

a trafficking charge where the two offenses were connected in a single course of conduct and where the defendant did not demonstrate any prejudice to require severance. [303-304]
At a criminal trial the evidence was sufficient to justify the submission of an indictment for trafficking in cocaine to the jury for consideration. [304-306]


INDICTMENTS found and returned in the Superior Court Department on August 9, 1988.

Pretrial motions were heard by *John Paul Sullivan,* J., and the cases were tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Neila J. Straub* for the defendant.

*Michael Fabbri,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, Rufino Montanez, was convicted of distribution of cocaine (second offense) and trafficking in cocaine in violation of G. L. c. 94C, §§ 32A (*b*), 32E (*b*) (2) (1988 ed.).[1] The judge sentenced him to from nine to ten years on the distribution charge and from fourteen to fifteen years on the trafficking charge, the sentences to be served consecutively at the Massachusetts Correctional Institution at Cedar Junction. The defendant appealed, arguing that the judge erred in: (1) denying his motion for a new trial on the ground of ineffective assistance of counsel; (2) denying his motion to suppress certain evidence; (3) denying his motion to sever the two charges for separate trials; and (4) denying his motion for a required finding of not guilty on the trafficking charge. We transferred the case to this court on our own motion, and we now affirm.

---

[1]The second offense element of the distribution charge was based on the fact that the defendant had pleaded guilty to the charge of possession of cocaine in 1987. See G. L. c. 94C, § 32A (*b*). The defendant elected to proceed without the jury on this issue, which was tried before the trial judge after the jury returned guilty verdicts on the two indictments before them.

The jury could have found the following facts from the evidence at trial. On February 6, 1988, the defendant sold three and one-half grams of cocaine to an undercover police officer at the defendant's Woburn apartment. For the following four months, police maintained continuous surveillance of the defendant as part of an ongoing drug investigation in the area. During this period the police noted that, when the defendant was at his apartment in the evening, a lighted lamp would be set in a certain second-floor window (though this window was not in the defendant's apartment), the defendant's black Lincoln Continental automobile would be parked outside, and foot and automobile traffic to and from the rear entrance of the apartment building would increase.

On June 3, 1988, the police obtained a search warrant authorizing a search of the defendant's apartment. The affidavit in support of the application for the warrant described the undercover purchase of February 6, 1988, and the observations gathered in the subsequent surveillance of the defendant. In addition, the affidavit included information provided by two confidential informants. The first informant stated that he had seen the defendant sell cocaine to others on four separate occasions, and that he had personally purchased cocaine from the defendant in May of 1988. All of these sales took place in the defendant's apartment. The second informant, according to the affidavit, also said that he had seen the defendant sell cocaine from his apartment, and added that "the way to know if Montanez is [doing] business is if the Black Lincoln [Continental] is out side the building" and "the window curtain is pulled back and a lamp is in the window."

The warrant was executed on the evening of June 3, 1988. As police entered the hallway leading to the defendant's second-floor apartment, the defendant poked his head out of the apartment door a number of times. When the defendant then came out into the hallway, the police ordered him to lie prone on the staircase landing outside the apartment. The defendant was arrested, and a search of his person revealed $1,406 in cash. Inside the apartment, the police found a flare

gun and flares, a telephone tap detector, and several empty, plastic-coated paper folds of a type used in the drug trade to package small amounts of cocaine for sale. In addition, an officer moved a tile in the dropped ceiling directly outside and above the door to the defendant's apartment. Sliding the hallway ceiling tile aside, the officer discovered three plastic bags. The first plastic bag contained a powder that proved to be nearly-pure cocaine,[2] the second contained a nonnarcotic white powder commonly used to dilute cocaine, and the third contained five or six paper folds, each of which in turn contained approximately one-half gram of cocaine.

On April 5, 1989, the evening before trial was to begin, the defendant, trailed by a Woburn police officer, went to an airline terminal at Logan International Airport in Boston. There the officer approached the defendant, who was standing with a brown suitcase at the ticket counter. The clerk at the counter gave the officer the ticket that he was processing at the time, a one-way ticket to Puerto Rico issued in the name Rafael Lindt. The flight was scheduled to leave that night. The officer observed various articles of men's clothing in the brown suitcase when a woman accompanying the defendant opened it to remove certain items. The officer arrested the defendant, placed the suitcase in the police cruiser, and left with the defendant and the woman. The suitcase was admitted in evidence over the defendant's objection.

1. *Ineffective assistance of counsel.* The defendant claims that the judge improperly denied his motion for a new trial based on ineffective assistance of counsel. He points to three purported shortcomings in his attorney's performance: (1) counsel's failure to investigate a simultaneous search of another resident of the defendant's apartment building; (2) counsel's failure to seek suppression of the brown suitcase seized at the airport; and (3) counsel's failure to present mitigating factors at sentencing and to request concurrent sentences. We reject the first two claims on procedural and

---

[2] A police officer testified that the bag contained 29.51 grams of 86-91 % pure cocaine.

substantive grounds, and the third on procedural grounds only.

The defendant's claims of ineffective assistance are barred as a procedural matter because the defendant failed to raise these arguments in a timely fashion.[3] A procedural chronology is in order. Several months after his trial, the defendant moved for a new trial, pursuant to Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979), on the ground of ineffective assistance. The motion was denied on April 2, 1990. The defendant moved for reconsideration of the motion for a new trial on May 8, 1990. The motion for reconsideration was denied on May 14, 1990. The defendant then appealed both rulings on June 7, 1990.

Upon the denial of the motion for a new trial on April 2, the defendant was permitted thirty days to file either an appeal, Mass. R. A. P. 4 (b), as amended, 378 Mass. 928 (1979), or a motion for reconsideration. *Commonwealth* v. *Cronk*, 396 Mass. 194, 197 (1985).[4] The defendant filed his motion for reconsideration thirty-six days later, on May 8, and his appeal more than sixty days later, on June 7. In addition, the defendant has made no showing of "good cause" that might justify our extending the thirty-day deadline. Mass. R. A. P. 14 (b), as amended, 378 Mass. 939 (1979). Thus, the defendant's motion for reconsideration and his appeal from the denial of the motion for a new trial are time barred.[5]

Nevertheless, we address the merits of the defendant's claims. We discuss the first claim because we reject it for

[3]The Commonwealth does not contest the timeliness of the defendant's remaining claims.

[4]Under *Cronk, supra,* quoting *United States* v. *Cook*, 670 F.2d 46, 48 (5th Cir.), cert. denied, 456 U.S. 982 (1982), a motion for reconsideration must be brought within a "reasonable time," which, in criminal matters, is construed as the period allocated for noticing an appeal. Rule 4 (b) requires that such appeals be filed within thirty days.

[5]This case does not present the situation in which a motion for reconsideration *timely filed* may stop the appeal period from running until the motion is denied. See *Commonwealth* v. *Powers*, 21 Mass. App. Ct. 570, 573 (1986), quoting *United States* v. *Dieter*, 429 U.S. 6, 8 (1976).

substantive as well as procedural reasons. In addition, we note that the defendant raises the second and third claims for the first time on this appeal. Because these claims have not been adjudicated, the trial judge may consider them on a second motion for a new trial or resentencing under Mass. R. Crim. P. 30 (b). Therefore, we express our view of the second and third claims, although they are not properly before this court, in order to guide the trial judge should the defendant elect to raise them again in a rule 30 (b) motion for postconviction relief.[6]

The standards governing claims of ineffective assistance of counsel are well established. The defendant must demonstrate that his attorney's performance fell "measurably below that which might be expected from an ordinary fallible lawyer" and that counsel's conduct "has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977) (requiring a "showing that better work might have accomplished something material for the defense"). Where the defendant challenges counsel's tactical or strategic decisions, he must establish that such decisions are not merely unreasonable, but "manifestly unreasonable," *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978), in order that we may "avoid characterizing as unreasonable a defense that was merely unsuccessful." *Commonwealth* v. *White,* 409 Mass. 266, 272 (1991).[7] The defendant's claims do not meet these tests.

---

[6]We are precluded from resolving these claims more definitively under G. L. c. 211, § 3 (1988 ed.), while this remedy remains open to the defendant.

[7]The defendant bases his claims of ineffective assistance of counsel on both the State and Federal Constitutions. We have stated that, if the *Saferian* test is met, then the requirements of the Federal Constitution are necessarily satisfied as well. See *Commonwealth* v. *Haggerty,* 400 Mass. 437, 438 n.2 (1987); *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 n.3 (1985). Therefore, we analyze the defendant's claims under the *Saferian* standard only.

The defendant argues, first, that counsel's failure to investigate the arrest of one of the defendant's neighbors constituted ineffective assistance. Simultaneously, with the search of the defendant's second-floor apartment, the police, pursuant to a warrant, conducted a search of a third-floor apartment in the same building. The search revealed cocaine, and the neighbor was arrested. The defendant claims that he informed his lawyer of these facts, but that his lawyer failed to investigate the lead further. Noting that the neighbor also had access to the ceiling in the common hallway on the second floor, the defendant suggests that counsel's omission constitutes ineffective assistance in that it deprived him of the defense that the cocaine hidden in the ceiling belonged not to the defendant, but to the neighbor. We disagree.

If we assume for purposes of analysis that counsel's decision not to investigate the neighbor's arrest was "manifestly unreasonable" (though we do not so decide), the defendant clearly was not prejudiced thereby. The defendant suggests that, had counsel obtained the affidavit and return attached to the warrant authorizing the search of the neighbor's apartment, he would have learned that the neighbor was also known to sell cocaine and that cocaine packaged in paper folds was found in the neighbor's apartment. The persuasive value of this evidence, however, is negligible. The discovery of paper folds in the neighbor's apartment carries little weight given the fact that similar paper folds were discovered in the defendant's apartment, considerably closer to where the cocaine was hidden. In addition, the revelation that the neighbor was known as a cocaine dealer, according to a confidential informant cited in the affidavit, was critically flawed: in form, because the information was inadmissible hearsay and, in substance, because the same informant alleged that the neighbor "got a lot of his cocaine from [the defendant]." Even if counsel had found a way to overcome the admissibility problems, he undoubtedly would not have offered that evidence at the risk of revealing the defendant's role as the neighbor's supplier.

Further, the argument that counsel's omission was prejudicial to the defense suffers from a more fundamental defect — counsel did in fact introduce evidence similar to that contained in the warrant application. On cross-examination of two police officers, counsel brought out the fact that the police conducted drug investigations of another resident of the defendant's building. Thus, the record does not support the defendant's claim that counsel's alleged failure to investigate the neighbor's arrest deprived him of "an otherwise available, substantial ground of defence." *Saferian, supra.*[8]

The defendant's second claim of ineffective assistance stems from counsel's failure to move for suppression of the brown suitcase found in the defendant's possession at the airport on the eve of trial. Again, even if counsel's failure to

---

[8]The defendant also argues that the prosecutor's failure to produce the warrant application in response to a discovery request violated his right to a fair trial under the Federal and State Constitutions. Ordinarily the prosecution is required to disclose exculpatory, material evidence to the defense. *Commonwealth* v. *Gregory*, 401 Mass. 437, 441 (1988). Assuming arguendo that the warrant papers contained exculpatory evidence, see *id.* at 442, the question then becomes whether that evidence was "material." *Commonwealth* v. *Wilson*, 381 Mass. 90, 107 (1980). The definition of "material" varies with the specificity of the defendant's discovery request. In this case, the defendant requested that the Commonwealth provide "any facts of an exculpatory nature within the possession, custody, or control of the prosecutor," pursuant to the mandatory discovery requirement of Mass. R. Crim. P. 14 (a) (1) (C), 378 Mass. 874 (1979). This request, which merely recited the language of rule 14 (a) (1) (C), was a general request. Contrast *Commonwealth* v. *Gallarelli*, 399 Mass. 17, 20-22 (1987) (request for all exculpatory material combined with more specific requests for police reports held to be a specific request). Where the defendant's discovery request is so broad, the test of materiality is whether the evidence in question "creates a reasonable doubt that did not otherwise exist . . . [when] evaluated in the context of the entire record." *United States* v. *Agurs*, 427 U.S. 97, 112 (1976). Accord *Gregory, supra*; *Gallarelli, supra* at 21. The statements contained in the warrant papers do not meet this test. The jury were presented with evidence that called into question the defendant's possession of the cocaine, including testimony that another resident of the apartment building was the subject of drug investigations. Thus, in view of the fact that substantially similar evidence was presented at trial, we cannot conclude that the information contained in the warrant papers might have created "a reasonable doubt that did not otherwise exist." The prosecution, therefore, was not required to produce this evidence on the facts of this case.

make such a motion was "manifestly unreasonable" (which we do not determine), the defendant suffered no prejudice as a result of counsel's omission.[9] Evidence of flight is properly admitted to prove consciousness of guilt. *Commonwealth* v. *Toney,* 385 Mass. 575, 583 (1982). In this case, both the testimony of the officer who followed the defendant to the airport and the plane ticket itself were admitted as evidence of flight. Therefore, we conclude that there was sufficient convincing, uncontradicted evidence of flight that counsel's decision not to contest the admission of the suitcase was not prejudicial to the defendant.

Finally, the defendant argues that counsel's performance was deficient in that he failed to present certain mitigating factors at the defendant's sentencing or to argue for concurrent sentences. At the sentencing, counsel noted only that the defendant "has two children [whom] he has been supporting" and "has worked many years in Woburn where his roots are." Counsel failed to mention the defendant's involvement in various community groups and did not elaborate on relevant points in the defendant's work or family history. See *Commonwealth* v. *Lykus,* 406 Mass. 135, 145-146 (1989). The Commonwealth suggests that counsel described these factors to the judge only a few days before sentencing, at a hearing on a motion for a review of bail, and that it would have been redundant to repeat them. See *Commonwealth* v. *Mamay,* 407 Mass. 412, 425 (1990). Counsel's comments at the prior hearing, however, were scarcely more detailed. More importantly, counsel never requested concurrent rather than consecutive sentences. See *Lykus, supra* at 146; *Osborne* v. *Commonwealth,* 378 Mass. 104, 113 (1979). Counsel's performance in this regard was deficient, and we cannot conclude that his performance did not affect the judge's sentencing decision.

We conclude, therefore, that the defendant's claim of ineffective assistance at the sentencing, alone among the grounds

---

[9]We express no opinion as to the legality of the police officer's "seizure" of the suitcase or the likelihood of success on a motion to suppress it.

he advances, has merit. Because the defendant's appeal is
time-barred, however, we do not decide this issue. We offer
our view of the evidence only to guide the trial judge should
the defendant elect to bring a second motion for a new trial
or for resentencing.

2. *Denial of the motion to suppress evidence.* The defend-
ant claims error in the denial of his motion to suppress evi-
dence seized during the search of his apartment and the ad-
joining hallway. He contends that the affidavit in support of
the search warrant, which relied in part on information sup-
plied by confidential informants, failed to set forth sufficient
facts to support a finding of probable cause. He further sug-
gests that the search of the hallway exceeded the scope of the
search warrant. Neither argument succeeds.

a. *The search warrant affidavit.* In *Commonwealth* v.
*Upton*, 394 Mass. 363, 374-376 (1985), we held that, under
art. 14 of the Declaration of Rights of the Massachusetts
Constitution, the determination whether an affidavit that in-
corporates information supplied by unnamed informants es-
tablishes probable cause is governed by the principles devel-
oped under *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and
*Spinelli* v. *United States*, 393 U.S. 410 (1969). Thus, such
an affidavit must inform the magistrate of "(1) some of the
underlying circumstances from which the informant con-
cluded that the contraband was where he claimed it was (the
basis of knowledge test), and (2) some of the underlying cir-
cumstances from which the affiant concluded that the in-
formant was 'credible' or his information 'reliable' (the ve-
racity test)" (citation omitted). *Upton, supra* at 375. If the
informants' tips do not satisfy both elements of the *Aguilar-
Spinelli* test, other statements in the affidavit that corrobo-
rate the tips may support a finding of probable cause. *Id.*
The affidavit in this case satisfies the *Aguilar-Spinelli*
standard.

The affidavit relied on two confidential informants. Ac-
cording to the affidavit, both informants saw the defendant
sell cocaine from his apartment on several occasions. In fact,
one informant had himself bought cocaine from the defend-

ant, and the other had watched the defendant sell cocaine within days of the submission of the affidavit. Because the informants' knowledge was based on personal observations, the "basis of knowledge" prong of the *Aguilar-Spinelli* test was satisfied. *Commonwealth* v. *Valdez*, 402 Mass. 65, 70 (1988).

The affidavit also established the informants' credibility in a number of ways. The first informant, according to the affidavit, had provided information that led to the conviction of two named men for distribution of cocaine. This assertion was sufficient to support a magistrate's conclusion that the first informant was reliable. *Commonwealth* v. *Amral*, 407 Mass. 511, 515 (1990). The second informant had assertedly provided information leading to the arrest (but not the conviction) of two others for distribution of marihuana. This information without more would not establish the second informant's reliability. *Commonwealth* v. *Rojas*, 403 Mass. 483, 486 (1988). The second informant's story, however, was substantially corroborated by the police officers' own observations.

The affidavit related the February 6, 1988, undercover purchase of cocaine from the defendant, and numerous details gathered by police officers during the surveillance of the defendant. In addition, the informant stated that, when the defendant was open for business, his distinctive automobile would be parked outside the apartment building, a lighted lamp would be set in a designated window, and a lookout would be posted. The police observed the same activity during their surveillance of the defendant. Thus police corroboration bolsters the second informant's credibility. See *Upton*, *supra* at 376. We hold, therefore, that the informants' tips satisfied both prongs of the *Aguilar-Spinelli* standard, and that the affidavit contained ample evidence to support the magistrate's finding of probable cause.

b. *The search of the hallway ceiling.* The defendant contends that, even if the search warrant was valid, the officers' search of the area above the dropped ceiling in the common hallway outside his apartment exceeded the scope of the war-

rant and was unlawful under the State and Federal Constitutions. The defendant's claim under the Fourth Amendment to the United States Constitution fails at the outset because he lacks standing to raise the issue. *United States* v. *Salvucci*, 448 U.S. 83 (1980). This court, however, has recently decided that, where possession is an essential element of the charge, a defendant has standing to contest the search and seizure of evidence under the State Constitution, even though the defendant did not have actual possession of it at the time of the search. *Commonwealth* v. *Frazier, ante* 235 (1991).

When a defendant has standing under our rule for State constitutional purposes, we then determine whether a search in the constitutional sense has taken place. *Commonwealth* v. *Frazier, supra* at 244 n.3. This determination turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy. See *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 742 (1981); *California* v. *Ciraolo*, 476 U.S. 207, 211 (1986), quoting *Katz* v. *United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). The measure of the defendant's expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable. See *Ciraolo, supra*; *Commonwealth* v. *Mamacos*, 409 Mass. 635, 638 (1991); *Commonwealth* v. *Panetti*, 406 Mass. 230, 231 (1989). The defendant bears the burden of establishing both elements. *Mamacos, supra.* In examining the expectation of privacy question under art. 14, we do not necessarily reach the same result as under Fourth Amendment analysis. *Commonwealth* v. *Panetti, supra* at 234.

Conceding for present purposes that the defendant may have had a subjective expectation of privacy in the space above the hallway ceiling, we conclude that that expectation was not reasonable. In evaluating the reasonableness of an individual's expectation of privacy, we look to a number of factors, including the character of the location involved. *Commonwealth* v. *Pina*, 406 Mass. 540, 545 (1990). Thus,

we consider whether the defendant owned the place involved, *Rawlings* v. *Kentucky*, 448 U.S. 98, 104 (1980); *Commonwealth* v. *Mora*, 402 Mass. 262, 265 (1988); whether the defendant controlled access to the area, *Commonwealth* v. *D'Onofrio*, 396 Mass. 711, 717 (1986); and whether the area was freely accessible to others, *Sullivan* v. *District Court of Hampshire, supra.* We have stated that "an individual can have only a very limited expectation of privacy with respect to an area used routinely by others." *Id.* See *Pina, supra* at 544-546; *D'Onofrio, supra.* One writer has suggested that "the fundamental inquiry is whether [the] practice, if not subjected to Fourth Amendment restraints, would be intolerable because it would either encroach too much upon the 'sense of security' or impose unreasonable burdens upon those who wished to maintain that security." W.R. LaFave, Search and Seizure § 2.1(d), at 313 (2d ed. 1987). In this case, the defendant neither owned nor controlled access to the hallway outside his apartment. The hallway was a common area, accessible to the public, that was freely and frequently used by people other than the defendant. To permit the police to make a warrantless intrusion into such an area does not encroach too much on the public's sense of security or impose unreasonable burdens on it. See *Commonwealth* v. *Thomas*, 358 Mass. 771, 773-775 (1971) (no legitimate expectation of privacy in cellar ceiling of apartment building). That is not to say that the police may seize evidence in common areas in all circumstances without fear of intruding on constitutional restrictions. If, for example, a tenant was permitted by lease or with the landlord's agreement to store belongings in a locked container in the common area, the tenant's expectation that the contents of such container could not be freely examined by others would be reasonable. Cf. *United States* v. *Chadwick*, 433 U.S. 1 (1977). A mailbox located outside an apartment in a common area would afford a tenant similar protection. Of course these examples are not all-inclusive, but offered only in contrast to the defendant's claim.

We conclude, therefore, that the defendant had no constitutionally protected reasonable expectation of privacy in the area above the hallway ceiling not leased or controlled by him nor subject to any agreement or understanding with the landlord as to its use. The police conduct, therefore, did not constitute a search in the constitutional sense. Consequently, it is unnecessary to reach the defendant's arguments that the "search" exceeded the scope of the warrant.

3. *Denial of the motion to sever.* The defendant next contends that the judge erred in denying his motion to sever the trials of the distribution and trafficking indictments. He argues that the distribution charge (stemming from the February 6, 1988, undercover purchase) and the trafficking charge (stemming from the subsequent surveillance and the evidence seized in the June 3, 1988, search) were unrelated, and that he was unfairly prejudiced by the joinder. We disagree.

Joinder is governed by Mass. R. Crim. P. 9, 378 Mass. 859 (1979). Under rule 9 (a) (3), the judge may join "related offenses" for trial unless he determines that joinder would not serve the interests of justice. Rule 9 (a) (1) defines "related offenses" as those which "are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan."

The determination whether joinder is appropriate is committed to the sound discretion of the trial judge. See *Commonwealth* v. *Todd*, 394 Mass. 791, 794 (1985); *Commonwealth* v. *Moran*, 387 Mass. 644, 658 (1982). This court has stated that joinder is appropriate where the offenses "constitute a single line of conduct, grow out of essentially one transaction, and would be proved by substantially the same evidence." *Commonwealth* v. *Gallison*, 383 Mass. 659, 671 (1981). Severance is required, however, where these criteria are not satisfied and the defendant would be prejudiced by the cumulative evidence of different offenses. *Id.* Applying these principles to the facts of this case, we conclude that joinder was proper.

The two offenses clearly are connected in a single course of conduct. There was ample evidence to support the Commonwealth's theory that the defendant continuously sold cocaine from his apartment in the four months between the undercover purchase and the search. In addition, evidence of the February 6 undercover purchase would have been admissible in a trial on the trafficking charge to establish the defendant's intent to distribute, an essential element of the charge of trafficking in cocaine. G. L. c. 94C, § 32E (*b*). See *Commonwealth* v. *Hoppin*, 387 Mass. 25, 33 (1982) (evidence of other crimes admissible "when it tends to show a state of mind, common scheme, plan, or method of action bearing on the crime charged").

Further, the defendant has not met his burden of demonstrating prejudice requiring severance. See *Gallison, supra.* This burden is not satisfied by a showing merely that the defendant's chances for acquittal would have been better had the two indictments been tried separately. *Id.* at 672. Rather, the defendant must establish that "the prejudice resulting from a joint trial is so compelling that it prevents [the] defendant from obtaining a fair trial." *Commonwealth* v. *Moran*, 387 Mass. 644, 658 (1982). In this case, however, there was substantial evidence to support both charges, and no indication that the jury inappropriately applied evidence of one charge toward the other. It is also relevant that the judge instructed the jury to consider the two indictments separately. There is no indication in the record that this instruction was inadequate to offset any possible prejudice from the joinder. See *Gallison, supra* at 671.

There was no abuse of discretion in the judge's denial of the motion to sever.

4. *Denial of the motion for required finding of not guilty.* At the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty on the trafficking

indictment.[10] The defendant argues that the judge improperly denied that motion. The judge's ruling was not in error.

The standard of review on the denial of a motion for a required finding of not guilty is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth v. Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). See *Commonwealth v. Colon-Cruz*, 408 Mass. 533, 545-546 (1990). In this case, the Commonwealth presented sufficient evidence to justify sending the indictment to the jury under this standard.

In order to convict the defendant on the charge of trafficking in cocaine, the Commonwealth was required to prove that the defendant knowingly or intentionally possessed twenty-eight or more (but less than 100) grams of cocaine with the intent to distribute the drug. See G. L. c. 94C, § 32E (*b*) (2). The evidence of these elements was strong, albeit circumstantial. The police discovered more than twenty-nine grams of cocaine as well as powder used to "cut," or dilute, cocaine immediately outside the defendant's apartment door, hidden above the dropped ceiling. In the same location, police found smaller amounts of cocaine packaged in paper folds. A police officer testified that this method of packaging was characteristic of the drug trade. Similar paper folds were found in the defendant's apartment (though these did not contain cocaine), as well as $1,406 in cash on the defendant's person. There was also expert testimony that the police officers' observations during the surveillance of the defendant, as well as the amount and purity of the cocaine discovered above the hallway ceiling, suggested that the de-

---

[10]The judge accepted the motion on both the distribution and trafficking charges. On appeal, however, the defendant offers no argument that the evidence on the distribution charge was insufficient to submit to the jury. Therefore that argument is waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). *Commonwealth v. Bongarzone*, 390 Mass. 326, 348 (1983).

fendant was engaged in the distribution of cocaine. Finally, there was the evidence of the defendant's attempt to flee on the eve of trial, from which the jury could infer consciousness of guilt. *Commonwealth* v. *Toney*, 385 Mass. 575, 583 (1982). The jury could have concluded from this evidence that the defendant possessed the cocaine with the intent to distribute it. Cf. *Commonwealth* v. *Pratt*, 407 Mass. 647, 651-654 (1990). The *Latimore* standard does not require that the Commonwealth entirely eliminate the possibility that someone other than the defendant could have committed the crime. *Commonwealth* v. *Casale*, 381 Mass. 167, 175 (1980). The mere possibility that one of the defendant's neighbors might have hidden the cocaine in the hallway ceiling, therefore, is not enough to warrant a required finding for the defendant. The judge did not err in denying the motion for a required finding of not guilty.

*Judgments affirmed.*