COMMONWEALTH *vs.* SHELDON D. HERRING.

No. 05-P-833.

Worcester. March 3, 2006. - May 25, 2006.

Present: GREENBERG, DUFFLY, & KATZMANN, JJ.

*Controlled Substances. Constitutional Law,* Search and seizure, Privacy.
   *Search and Seizure,* Forcible entry by police, Expectation of privacy.
   *Privacy. Evidence,* Chain of custody.

A criminal defendant who had automatic standing to challenge the
   constitutionality of the seizure by police of certain evidence, the posses-
   sion of which was an element of the crimes charged against him, was not
   required to show, for purposes of a pretrial motion to suppress evidence,
   that he had a reasonable expectation of privacy in the area searched by the
   police. [362-364]
Police officers were not required to make the "useless gesture" of announcing
   their purpose prior to their forcible entry into an apartment, where ample
   evidence demonstrated that the occupants of the apartment did not hear the
   police knocking or announcing their presence prior to their entry. [364-365]
At the trial of indictments charging possession of controlled substances, the
   judge correctly rejected the defendant's contention that supposed breaks in
   the chain of custody precluded the admission in evidence of cocaine seized
   by police during a search. [365-366]

INDICTMENTS found and returned in the Superior Court Depart-
ment on June 13, 2002.

A motion to suppress was heard by *Francis R. Fecteau,* J.,
and the cases were tried before *James P. Donohue,* J.

*Daniel R. Katz* for the defendant.

*David W. Waterfall,* Assistant District Attorney, for the
Commonwealth.

GREENBERG, J. Following the search of an apartment under
authority of a search warrant, officers of the Worcester police
department seized "crack" cocaine found in two different bags,
$404 in cash, and numerous other paraphernalia associated with
the narcotics trade. The defendant, who was present at the time

of the search, was indicted for possession of cocaine with intent to distribute (G. L. c. 94C, § 32A[*a*]), and possession with intent to distribute within 1,000 feet of a school (G. L. c. 94C, § 32J). On motion to suppress, the defendant argued that the unannounced and forceful entry into the apartment without a so-called "no-knock" warrant was unjustified. The motion was denied. At trial, the defendant objected to the admission in evidence of the cocaine because of supposed breaks in the chain of custody. This argument was rejected. The jury brought in guilty verdicts, and the defendant appeals. We hold that the entry into and the search of the apartment was lawful and that the judge correctly admitted the contested evidence at trial.

*Background.* a. *Evidence at hearing on motion to suppress.* At about 7:45 P.M. on February 4, 2002, six to eight officers of the Worcester police department vice squad arrived at 2 King Street, which is located in an area of the city known for drug trafficking and associated criminal activity. The officers entered the building through the rear door, utilizing a key obtained from the management company, and walked up an enclosed rear stairway to the third floor. At apartment 302, leased by the defendant's uncle, Otis Giles, Sergeant Thomas Gaffney, the officer in charge, knocked three times on the outer door, then "in a clear loud voice," announced "police." After a five to ten second wait, there being no response from within the apartment, Gaffney signaled one of his men to force the door with a battering ram. The assembled officers then moved into the apartment and yelled, "police." In a matter of seconds, they went down a hallway and saw three men seated on a couch in the living room. They were the defendant; his uncle, Otis Giles; and another man.

b. *Evidence at trial.* The following evidence was introduced at trial. As the police entered the living room, the defendant stuffed his left hand down into the seat cushion. Gaffney, fearing for his safety, drew his weapon and told the defendant to remove his hand from the couch. He placed the defendant on the floor and handcuffed him. Then he reached into the same spot between the couch cushions where the defendant had placed his hand and discovered a sandwich baggie. The baggie contained six smaller bags, which in turn contained fifty-seven

chunks of a "tannish rock substance" that appeared to be rock cocaine. He opened the larger bag, removed the six smaller bags that were inside, counted the rocks, and placed the contents back inside the larger bag.

Based on Gaffney's training and experience, the items seized were bundled in a manner similar to the way drugs are prepared for street sale. The rocks looked similar to others he had seized from other drug dealers in Worcester. Another officer testified that the items seized were consistent with distribution because they were individually packaged.

After the defendant and the other persons found in the apartment were secured, Gaffney informed them of their Miranda rights and asked them if they understood those rights. The defendant stated that he understood his rights. They were then searched and seated in the hallway. A search of the defendant yielded a cellular telephone and $394 in cash. He repeatedly asked why his uncle was being arrested and stated several times that the drugs found in the couch belonged to him.

The police continued the search of the apartment and recovered two walkie-talkies. Another officer who participated in the raid testified that, in his training and experience, walkie-talkies are commonly used by lookouts to alert drug dealers of police presence. The police also found sandwich bags with the corners cut out in the kitchen. The officer, based on his experience, concluded that these cut-corner baggies were consistent with packaging for illicit drug distribution.

The police also found a jacket, which the defendant admitted to the police belonged to him. Inside the jacket pockets were twenty to thirty slips of paper on which were written what appeared to be a telephone number and the word "rock" underneath the number. When the police called this number, it rang the cellular telephone seized from the defendant. Inside the jacket the police also found a set of keys, one of which opened the door to apartment 302.

The bags found in the couch were later sent out for analysis to a State laboratory, which determined that the bags contained cocaine with a net weight of 9.62 grams. The cocaine would have a total street value of about $1,140.

*Discussion.* a. *Expectation of privacy.* The defendant ques-

tions the legality of the search of apartment 302 and his arrest because the officers' entry into the apartment violated the so-called "knock and announce" rule. On that account, he contends that the officers failed to announce their purpose before forcing the door open. The requirement that police "knock and announce" their presence and purpose prior to the execution of a search warrant "has long been part of our common law." *Commonwealth* v. *Macias*, 429 Mass. 698, 700 (1999).

The Commonwealth contends that the defendant lacked a reasonable expectation of privacy in his uncle's apartment, and thus, no search and seizure in the constitutional sense took place. *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991).[1] The Commonwealth, as it must, concedes that under *Commonwealth* v. *Amendola*, 406 Mass. 592 (1990), the defendant has standing to contest the search under art. 14 of the Massachusetts Declaration of Rights, which grants more latitude to raise the privacy issue than that afforded by the Fourth Amendment to the United States Constitution, as construed by *Rakas* v. *Illinois*, 439 U.S. 128, 138-139 (1978), and *Minnesota* v. *Carter*, 525 U.S. 83, 87-90 (1998). Construed together, these cases effectively dispensed with standing as a requirement for Fourth Amendment purposes.

However, our cases make distinct the issues of standing and reasonable expectation of privacy. *Commonwealth* v. *Morrison*, 429 Mass. 511, 514 (1999). "When a defendant has standing under our rule for State constitutional purposes, [courts] then determine whether a search in the constitutional sense has taken place. . . . This determination turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy." *Commonwealth* v. *Montanez*, 410 Mass.

---

[1]The motion judge denied the defendant's motion to suppress based on the police officers' compliance with the "knock and announce" rule. In reaching this decision, he did not address the issue of the defendant's reasonable expectation of privacy; however, "[a]n appellate court is free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings." *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997). See *Aetna Cas. & Sur. Co.* v *Continental Cas. Co.*, 413 Mass. 730, 734-735 (1992) ("A prevailing party is, therefore, entitled to argue on appeal that a judge was right for the wrong reason, even relying on a principle of law not argued below"); *Commonwealth* v. *Bennett*, 414 Mass. 269, 271-272 (1993).

at 301. A defendant's expectation of privacy is measured by "(1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable." *Ibid.* Factors to be considered in determining the reasonableness of a defendant's expectation of privacy include "whether the defendant owned the place involved, . . . whether the defendant controlled access to the area, . . . and whether the area was freely accessible to others." *Id.* at 301-302.

We need not undertake this temerarious inquiry, however, because art. 14 of the Massachusetts Declaration of Rights presents an analytical difference on privacy issues as related to cases involving automatic standing. In cases where constructive possession triggers automatic standing, codefendants are treated the same for purposes of deciding whether there is a reasonable expectation of privacy. See *Commonwealth* v. *Frazier*, 410 Mass. 235, 243 (1991). Here, the record indicates that the defendant and his uncle, Giles, were charged with identical crimes as a result of the entry and search of the apartment. Prior to the trial in the instant case, Giles pleaded guilty to the charges, and there was evidence introduced at the defendant's motion hearing to that effect. Under these circumstances, the Supreme Judicial Court does not require that the defendant show a reasonable expectation of privacy in the area to be searched. See *Commonwealth* v. *Carter*, 424 Mass. 409, 411 (1997).

b. *Exception to the "knock and announce" rule.* Before attempting forcibly to enter a private dwelling to execute a warrant, police must knock, announce their identity, and state their purpose (which was not done here), unless circumstances justify dispensing with one or all of these requirements. See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 140-147 (1980), cert. denied, 451 U.S. 973 (1981), for a definitive history of the rule. The rule requiring law enforcement officials to knock and announce themselves when executing a warrant remains a principle of common law rather than a constitutional mandate. *Commonwealth* v. *Macias*, 429 Mass. at 700 n.2. Recent decisions, however, indicate that the knock and announce rule has a place in determining whether an unannounced entry is unreasonable

for purposes of the Fourth Amendment to the United States Constitution. See *United States* v. *Banks*, 540 U.S. 31, 35-38 (2003); *Wilson* v. *Arkansas*, 514 U.S. 927, 934 (1995); *Commonwealth* v. *Jimenez*, 438 Mass. 213, 216 (2002).

In the circumstances of this case, we agree with the Commonwealth that the "useless gesture" exception to the rule discussed in *Commonwealth* v. *Antwine*, 417 Mass. 637, 639-640 (1994), applies. There, the court indicated that adherence to the knock and announce rule would be a "useless gesture" in cases where the defendant would know why the police were present or where the occupants were asleep and would not have heard the announcement. See *United States* v. *One Parcel of Real Property*, 873 F.2d 7, 8-9 (1st Cir.), cert. denied sub nom. *Latraverse* v. *United States*, 493 U.S. 891 (1989) (where police knocked at 9:30 P.M. and waited for five to ten seconds before battering down the door, it would have been a futile gesture to state their purpose because their mere presence in an area where drugs are being stored for sale indicates their purpose). As in *Antwine*, there was ample evidence submitted at the motion hearing that the occupants of the apartment did not hear the police knocking or announcing their presence prior to their entry. An announcement of purpose by the police would have been a useless gesture. *Commonwealth* v. *Antwine*, 417 Mass. at 641.

c. *Admission of cocaine in evidence.* An item of real evidence must be authenticated or "identified" as the thing the proponent represents it to be. *Commonwealth* v. *LaCorte*, 373 Mass. 700, 704 (1977). If the object is one the witness can particularly identify, it will be sufficient, see *Commonwealth* v. *Andrews*, 403 Mass. 441, 462 (1988); if not, it becomes necessary for the witness to have placed an identifying mark or label thereon or to otherwise create a "chain of custody" that will help authenticate the item. See *Commonwealth* v. *Hogg*, 365 Mass. 290, 294-295 (1974). Here, Gaffney testified that the rocks of cocaine seized from the apartment were the same as those that were being entered in evidence. He testified that he examined them at the scene, opening the bags and counting the rocks. He stated that they were in the same condition as when he seized them. Thus, it was not necessary for the Commonwealth to

establish a chain of custody after the rocks had been sent to the State laboratory for analysis. In any event, the fact that there may be weaknesses in the chain of custody usually goes to the weight rather than the admissibility of the evidence. *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 230 (1992). *Commonwealth* v. *Jacobson*, 19 Mass. App. Ct. 666, 679 (1985). There was no error.

*Judgments affirmed.*