Lu, John T., J.
I.INTRODUCTION
The defendant, Matthew Cormier (Mr. Cormier), is charged with possession of child pornography in violation of G.L.c. 272, §29C. Mr. Cormier seeks to suppress all evidence that the police seized from a computer hard drive that he turned over to Excalibur Data Recovery, Inc. (“Excalibur”) for repair, and evidence seized as a result of the search of his home pursuant to a warrant later obtained.
During three days of hearings, Mr. Cormier has refined his arguments. He concedes, for the purpose of these motions, that the images viewed on the hard drive at Excalibur were illegal child pornography.[1] He alleges that police did not have the right to look at the contents of the hard drive, nor did they have the right to seize it. Mr. Cormier also claims that the warrant to search his residence was improperly granted, and that it did not grant the police the right to search the closet and safe or to look at the data on the thumb drive in the safe. No other issues have been raised.
The court concludes that the police lawfully viewed the images on Mr. Cormier’s hard drive and that the warrant to search Mr. Cormier’s residence for evidence of criminal activity was valid. The court denies the motions.
II. FINDINGS OF FACT
Based on the evidence presented, and reasonable inferences from the evidence, the court makes the following findings of fact. The court reserves the right to amend, modify or supplement these findings of fact in case of an appeal, at the request of a party, or for other reasons deemed appropriate.
1. On September 17, 2008, John Trask was a technician at Excalibur Data Recovery in Methuen, Massachusetts.
2. The defendant, Mr. Cormier, brought an internal hard drive in because it did not work.
3. Mr. Cormier asked an employee to attempt recovery of data on the hard drive.
4. Mr. Cormier and an employee signed a standard work agreement that stated that all information on the hard drive would be held in the strictest confidence and kept private.[2]
5. In the course of his recovery of the data, Mr. Trask copied the data onto four DVDs.
6. Following his standard practice he randomly looked at copied files to ensure that the copying process was proceeding correctly.
7. Image files are well suited to examination because they will not display correctly unless they have copied nearly perfectly.
8. Mr. Trask came across a folder named “kids” or “kidz.”
9. Once he opened the folder, he saw image files and opened a few, and saw photos of nude girls well under 18 years old.
10. Mr. Trask called a friend, Haverhill Police Captain Alan Ratte.
11. Eventually reaching Captain Ratte, he explained that he was recovering data from a customer’s hard drive when he came upon nude images of obviously underage girls.
12. Haverhill police referred Mr. Trask to state police, and, after some delays, Sergeant Thomas Neff met with Mr. Trask, who described what had happened, including that the images showed naked children, and then showed Sgt. Neff the images.
13. Mr. Trask gave Sgt. Neff copies of the standard work agreement.
14. Sgt. Neff saw four to five images, some obvious illegal child pornography, and some so-called child erotica, which is not illegal (according to police).
15. Sgt. Neff viewed about the same number of images as Mr. Trask had, but did not examine precisely the same images.
16. Some of the files on the hard drive referred to a software brand used to control a hard drive brand (used for backup) other than that of the hard drive being worked on.
17. This suggested that the owner of the hard drive had connected it to a computer for which the owner used another hard drive for backup.
*490 18. This, in turn, suggested that the illegal child pornography would be saved onto that hard drive for backup.
19. Sgt. Neff took the hard drive and DVDs.
20. It had taken Sgt. Neff and Mr. Trask several weeks to meet.
21. During that time, Mr. Cormier inquired about his hard drive.
22. Mr. Trask told him, at Sgt. Neffs suggestion, that he was working on it or that it was not ready.
23. After these events, police obtained a search warrant for Mr. Cormier’s house, and for the hard drive and DVDs.
24. When they executed the search warrant, Mr. Cormier was at home.
25. Police saw a wire running from a wall outlet into a locked closet.
26. Police asked Mr. Cormier to open the closet, which he did, and they discovered a safe situated among computer equipment.
27. Police asked him for the key and combination to open the safe.
28. The safe appeared large enough to fit an ordinary internal or external hard drive.
29. Mr. Cormier again complied.
30. In the safe, police found an ordinary thumb drive.
31. Police seized the thumb drive, obtained a search warrant for it, and found child pornography on it.
32. Mr. Cormier said various things to police during the search, including answers to their questions that assisted in the search.
33. A reasonable person in his position would have been very nervous but would have thought that he was free to leave.
34. At the end of the search he was not arrested.
35. He was not under the influence of drugs, alcohol, or mental illness and his will was not overcome.
36. His statements were voluntary beyond a reasonable doubt.[3]
III. DISCUSSION
a. Standing to Challenge the Search
Because Mr. Cormier is charged with a possessory offense, he has standing to challenge the legality of evidence that the police obtained from his hard drive and his residence. See Commonwealth v. Amendola, 406 Mass. 592, 601 (1990) (“When a defendant is charged with a crime in which possession of the seized evidence at the time of the contested search is an essential element of guilt, the defendant shall be deemed to have standing to contest the legality of the search and the seizure of that evidence”).
b. The Pre-Warrant Search of the Hard Drive
Where police have conducted a warrantless search and seizure, the Commonwealth has the burden to show that the search was lawful. Commonwealth v. Berry, 420 Mass. 95, 105-06 (1995). For that burden to attach, however, Mr. Cormier must demonstrate that a search and seizure in the constitutional sense has occurred. Id. at 105.
In deciding whether a search in the constitutional sense took place, the court must determine “whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy.” Commonwealth v. Porter P., 456 Mass. 254, 259 (2010), quoting Commonwealth v. Montanez, 410 Mass. 290, 301 (1991). “The measure of the defendant’s expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable.” Id., quoting Montanez, 410 Mass. at 301. “If no one has a reasonable expectation of privacy in the place searched, the police are free to search that place without a warrant and without probable cause, as often as they wish.” Id. (internal citations omitted). However, “if a defendant has a reasonable expectation of privacy, the police may search the place, in the absence of exigency, only with a warrant supported by probable cause or with consent.” Id. (internal citations omitted). In determining whether a defendant has a reasonable expectation of privacy in the place searched, courts consider several factors, “including the nature of the place searched, whether the defendant owned the place, whether he controlled access to it, whether it was freely accessible to others, and whether the defendant took ‘normal precautions to protect his privacy’ in that place.” Id., citing Commonwealth v. Pina, 406 Mass. 540, 545 (1990).
By signing the “Data Recovery Agreement” with Excalibur, Mr. Cormier manifested a subjective expectation of privacy in the contents of his hard drive. The question is, then, whether his subjective expectation of privacy in the hard drive is one that society is prepared to recognize as reasonable. See id. A person may have a reasonable expectation of privacy in his or her computer files. See Commonwealth v. Kaupp, 453 Mass 102, 107 (2009) (recognizing that the defendant had a reasonable expectation of privacy in files that were not accessible to other network users). Several federal courts have also endorsed this view, analogizing computer files to closed containers. See United States v. Al-Marri, 230 F.Sup.2d 535, 541 (S.D.N.Y. 2002) (“Courts have uniformly agreed that computers should be treated as if they were closed containers”); United States v. Runyan, 275 F.3d 449, 458 (5th Cir. 2001) (assuming that computer disks are containers and subject to standards applying to closed container searches); United States v. Barth, 26 F.Sup.2d 929, 936 (W.D.Tex. 1998) (finding that Fourth Amendment *491 protection of closed computer files and hard drives is similar to protection afforded to closed containers and closed personal effects); United States v. Blas, 1990 WL 265179, at *21 (E.D.Wis. Dec. 4, 1990) (“[A]n individual has the same expectation of privacy in a pager, computer, or other electronic data storage and retrieval device as in a closed container . . .”).
Although not binding, this federal precedent suggests that Mr. Cormier had an objectively reasonable expectation of privacy in the files on his hard drive. This conclusion is further supported by the fact that Mr. Cormier provided his hard drive to Excalibur for the sole purpose of having it repaired, without instructing Mr. Trask to back up specific files. See Barth, 26 F.Sup.2d at 937 (defendant retained expectation of privacy in files on his hard drive when he gave hard drive to technician “for the limited purpose of repairing a problem unrelated to specific files and also expected that he would have the unit back the following morning to continue his business”). But see United States v. Grant, 434 F.Sup.2d 735, 744-45 (D.Neb. 2006) (defendant charged with possession of child pornography images on his home computer did not have reasonable expectation of privacy in images viewed by repair shop’s computer technician because defendant himself told technician that he would find “raunchy” photographs on the computer, and instructed technician to save such photographs). The fact that Mr. Cormier placed a call to Excalibur inquiring about the status of the repair job demonstrates that he did not intend to give up his control of the hard drive and expected to get it back as soon as it was repaired. The court concludes that Mr. Cormier retained a legitimate expectation of privacy in the files on his hard drive.
The next issue is whether Mr. Trask and Sgt. Neffs viewing of the flies without first obtaining a warrant was unlawful. Mr. Trask’s viewing of the images did not violate the Fourth Amendment because he was a private party not acting under the authority of the state. See Commonwealth v. Leone, 386 Mass. 329, 333 (1982) (“Evidence discovered and seized by private parties is admissible without regard to the methods used, unless State officials have instigated or participated in the search”); see also Dist Attorney for the Plymouth Dist. v. Coffey, 386 Mass. 218, 221 (1982) (“[EJvidence illegally obtained by private parties and turned over to the police is not a violation of the Fourth Amendment”). Mr. Task made the decision to open the suspicious files on Mr. Cormier’s hard drive as a private citizen, while trying to repair the hard drive at Mr. Cormier’s request. The government did not know that Mr. Cormier asked Mr. Trask to repair his hard drive and did not instruct Mr. Trask to inspect the files. There is no evidence that the government did anything to “solicit, provoke, or tempt” Mr. Task into viewing the files. See Commonwealth v. Brandwein, 435 Mass. 623, 631 (2008).
As to Sgt. Neffs viewing of the files, when the state conducts a search in response to information that a private party obtained and communicated to the government, “the legality of the governmental search must be tested by the scope of the antecedent private search.” United States v. Jacobsen, 466 U.S. 109, 116 (1984). “The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated. In such a case the authorities have not relied on what is in effect a private search, and therefore presumptively violate the Fourth Amendment if they act without a warrant.” Id. at 117-18.
A Massachusetts Superior Court Justice has agreed with the position of the Fifth and Eleventh Circuits of the United States Court of Appeals that a police examination of materials that were initially discovered and viewed by a private party, even if such examination was more thorough than that of the private individual, was not outside the scope of the private individual’s initial search. See Commonwealth v. Raboin, 24 Mass. L. Rptr. 278, 282-83 (Mass.Super. 2008) (Lowy, J.). Judge David A. Lowy found that the police did not impermissibly exceed the scope of the private individual’s search when they viewed entire DVDs containing illegal images of which the private parties only viewed portions. See id., citing United States v. Slanina, 283 F.3d 670, 680 (5th Cir. 2002), vacated on other grounds 537 U.S. 802 (2002) (“Once [the private individual] looked at the computer and zip disk, [the defendant’s] expectation of privacy in them had already been eroded. He could not then complain about the FBI search of the same materials even though the FBI may have looked at more files”); Runyan, 275 F.3d at 464 (“[T]he police do not exceed the scope of a prior private search when they examine the same materials that were examined by the private searchers, but they examine [those] materials more thoroughly”); United States v. Simpson, 904 F.2d 607, 610 (11th Cir. 1990) (holding that government’s search of box containing child pornography did not exceed scope of private search “simply because [government officials] took more time and were more thorough than [private individuals]”).
Mr. Trask’s viewing of the DVD “opened the container” of each DVD. See Raboin, 24 Mass. L. Rptr. at 283, citing State v. Robinson, 653 S.E.2d 889 (S.C.Ct.App. 2007). When Sgt. Neff then viewed the files on the hard drive, Mr. Cormier’s expectation of privacy in them “had already been eroded.” Id., citing Slanina, 283 F.3d at 680. The court denies the motion to suppress as to the files on the hard drive that Mr. Trask and Sgt. Neff viewed prior to obtaining a search warrant.
c. Search of Mr. Cormier’s Residence Pursuant to Warrant
Mr. Cormier’s challenges the lawfulness of the search of his apartment based on the lack of particu *492 larity in the search warrant. He also argues that the affidavit in support of the search warrant did not establish probable cause to believe that child pornography would be found in his residence. These arguments lack merit. The search warrant granted both the right to seize data storage devices located in Mr. Cormier’s residence, and to examine them. The affidavit established probable cause to suspect that further evidence of criminal activity would be found in Mr. Cormier’s house and demonstrated a nexus between the files discovered by Excalibur and the thumb drive.
d. Voluntariness of Mr. Cormier’s Statements
Mr. Cormier argues he “acquiesced to a show of lawful authority by giving police the key and combination to the safe because he felt coerced into doing so.” He claims that he was “intimidated” by the police officers during the search of his apartment because “[t]hey were armed and they were intimidating, particularly when they made accusations against him and were walking around the area of his house in full force.” Mr. Cormier’s statements were not custodial, and were voluntary beyond a reasonable doubt. See Commonwealth v. Selby, 420 Mass. 656, 663 (1995) (test for voluntariness is “whether in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act”).
IV. ORDER
The defendant, Matthew Cormier’s, motions to suppress evidence (papers #23, #24 and #26) are DENIED.

The court assumes that the images it examined in connection with the motion to dismiss are some of the same images involved in these motions. If so, there can be no doubt that the Images provide probable cause to believe that they are illegal child pornography.

The “Confidentiality” clause of the Data Recovery Agreement provided: “Work performed Is confidential and held in strict confidence. No information/data processed is used for corporate or personal gain ...”

The court makes this finding beyond a reasonable doubt.