Lowy, J.
(dissenting, with whom Cypher, J., joins). I disagree with the court’s conclusion that it was unreasonable for Sergeant Murphy of the Milton police department to search the defendant’s bag in the circumstances. Accordingly, I would affirm the defendant’s convictions, including his conviction of wilful disturbance.
The “touchstone” of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights is reasonableness. Commonwealth v. Blais, 428 Mass. 294, 297 (1998). Where a warrantless search is based on a reasonable suspicion that an individual presents a danger, “[t]he officer need not be absolutely certain that the in dividual is armed; the issue is whether a reasonably prudent [person] in the circum *728 stances would be warranted in the belief that his [or her] safety or that of others was in danger.” Commonwealth v. Johnson, 454 Mass. 159, 164 (2009), quoting Terry v. Ohio, 392 U.S. 1, 27 (1968). In determining the reasonableness of a search, ‘“we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.” Blais, supra at 297, quoting Ohio v. Robinette, 519 U.S. 33, 39 (1996). See Commonwealth v. Sanborn, 477 Mass. 393, 396 n.3 (2017) (acknowledging possibility that warrantless seizures to serve domestic abuse prevention orders may be reasonable). See also id. at 396-397 (Gants, C.J., concurring) (same, even where facts do not satisfy existing exception to warrant requirement).
Considering the totality of circumstances in this case, I conclude that the defendant had a reduced expectation of privacy and that Murphy’s search of the defendant’s backpack was reasonable, based on the potential danger to students. Cf. New Jersey v. T.L.O., 469 U.S. 325, 340 (1985) (T.L.O.) (in “certain limited circumstances neither [probable cause nor reasonable suspicion] is required” [citation omitted]).
An individual who attempts to gain entry to a school, where public access is restricted, does not have the same expectation of privacy as an individual in a home, on a street corner, or even in a motor vehicle. See Commonwealth v. Montanez, 410 Mass. 290, 301 (1991) (search in “constitutional sense” takes place where police intrude on constitutionally protected reasonable expectation of privacy). Determining whether such a reasonable expectation exists is a two-step inquiry: “(1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize [the reasonableness of] that expectation.” Id.
Although the defendant manifested a subjective expectation of privacy, I conclude that society would not be willing to accept the reasonableness of the defendant’s expectation of privacy in the circumstances of this case.[1] The government has a vital interest in ensuring the safety of our schools and the children who attend *729 them. In T.L.O., 469 U.S. at 340, it was the “school setting” itself that required “some modification of the level of suspicion of illicit activity needed to justify a search.” See id. at 352-353 (Black-mun, J., concurring) (“Indeed, because drug use and possession of weapons have become increasingly common among young people, an immediate response frequently is required not just to maintain an environment conducive to learning, but to protect the very safety of students and school personnel”).
Even dating back to 2001 — well before the highly publicized tragedies at the Virginia Polytechnic Institute and State University (Virginia Tech) and in Newtown, Connecticut — we had taken judicial notice of the danger of violence in schools. Commonwealth v. Milo M., 433 Mass 149, 156-157 & n.8 (2001). See Commonwealth v. Whitehead, 85 Mass. App. Ct. 134, 138 (2014) (taking judicial notice of school shootings in Columbine, Colorado; Santee, California; and Newtown, Connecticut). Given this widely-known backdrop, individuals attempting to enter a school — particularly without any apparent relationship to the school or the people there — have, at best, an expectation of privacy to their persons and their belongings that is significantly less than their expectation of privacy in their homes or motor vehicles, or while on a street corner. See Commonwealth v. Pina, 406 Mass. 540, 545, cert. denied, 498 U.S. 832 (1990) (nature of location of search is relevant to its reasonableness). See also T.L.O., 469 U.S. at 340 (school setting reason for reducing “level of suspicion”). Rather, such an individual attempts to gain entry into a place where safety is of paramount importance and must be vigilantly safeguarded.
Further, the circumstances of this case differ from those involving searches of students, such that the distinction between searches conducted by law enforcement and those conducted by school officials does not bear the same import. Although school officials may face dangers when searching students, they are searching individuals with whom they have some familiarity. Ostensibly, school officials are generally equipped to deal with problems stemming from students. To conclude that, on these facts, a search by officials at Milton High School (school) of a *730 nonstudent would have been subject to reduced Fourth Amendment and art. 14 scrutiny could have the undesirable effect of encouraging school officials to confront potentially dangerous individuals, rather than encouraging them to seek assistance from law enforcement with the appropriate training to handle such scenarios.
Murphy’s own knowledge at the time of the search established a reasonable basis to search the defendant in the circumstances.[2] She knew that school officials had requested police assistance to deal with a nonstudent who, by duplicity, had tried to gain entry to the school.[3] Murphy arrived in the conference room where the school officials were with the defendant, and it was thus reasonable for her to believe that the defendant was the nonstudent about whom she had been called. Murphy knew the school officials from previous interactions, and she observed that they were visibly distraught throughout this ordeal. Murphy also noticed that the defendant appeared to be nervous, and she noted the smell of marijuana and alcohol in the school conference room. Finally, Murphy arrived shortly after classes had ended for the day, making it likely that students would be out and about the school grounds, increasing their likelihood of exposure to the potentially intoxicated defendant, should he have been released.
I conclude that the combination of the defendant’s reduced expectation of privacy, the heightened government interest in school safety, and Murphy’s knowledge made frisking[4] the de *731 fendant’s person and backpack reasonable. Even without specific facts to suggest that he was armed, the location, the timing, the suspicious nature of the defendant’s conduct, and his potential intoxication warranted the officer’s concern for the safety of students at the school. See Johnson, 454 Mass. at 164. The only alternative — apart from potentially arresting the defendant for trespass, which would have allowed for a search incident to arrest — would have been to return the backpack and release him, without knowing what the bag contained, at a time students were likely to be milling about the school grounds. I believe it was eminently reasonable — and prudent — in these circumstances for Murphy to feel the bag for weapons before potentially returning it to the defendant and allowing him to leave.
For these reasons, I respectfully dissent.

I do not dispute that students have a reasonable expectation of privacy in their' schools. The reasonableness of that expectation, however, is lesser than the expectations of privacy that are typically applicable in other contexts, because students may be subject to search in the absence of either probable cause of criminality or reasonable suspicion that they are aimed. See New Jersey v. T.L.O., 469 U.S. 325, 341 (1985). The question here, however, is what expectation a person with no apparent relationship to a school, its students, or its *729 faculty should have when attempting to enter school grounds. I agree with the court that the analytical framework from T.L.O is not applicable. The lesser expectation of privacy possessed by students, at least with respect to searches by school officials, is a helpful point of reference in analyzing the defendant’s expectation of privacy.

Murphy may well have had probable cause to believe the defendant had committed trespass or attempted criminal trespass, in which case the defendant may have been subject to a search incident to arrest for that crime. See Commonwealth v. Washington, 449 Mass. 476, 481-482 (2007) (search incident to arrest may take place before arrest as long as search and arrest are “substantially contemporaneous”). This issue, however, is not argued on appeal, and in any event, I would affirm based on the defendant’s reduced expectation of privacy.

As the court concludes, the facts did not support the judge’s findings that Murphy had actual knowledge of the defendant’s specific lies. The parties did not argue, and thus the court does not address, whether the “collective knowledge” doctrine, which generally imputes the knowledge of one police officer to other police officers who are engaged in a cooperative effort, could be extended to apply to school officials in this case. See Commonwealth v. Gullick, 386 Mass. 278, 283-284 (1982) (evaluating probable cause based on collective knowledge of officers).

Because Murphy felt the exterior of the bag and felt a hard object before she opened it, it is unnecessary to address whether the sergeant could have simply opened the bag. Although Murphy did not explicitly testify that she believed the *731 hal'd object was a weapon, the judge inferred that Murphy opened the bag because she suspected the object was a weapon. This inference was reasonable considering Murphy’s testimony as a whole, in which she described moving the bag out of the defendant’s reach and hearing a “clank” when she did so.