COMMONWEALTH vs. PAUL BRADY
(and a companion case[1]).

No. 02-P-452.

Berkshire. June 30, 2003. - November 3, 2003.

Present: BROWN, BERRY, & McHUGH, JJ.

*Practice, Criminal,* Trial jury-waived, Admission to sufficient facts to warrant finding, Double jeopardy. *Constitutional Law,* Double jeopardy.

At a criminal trial, the judge erred in stopping the proceedings midway through the direct examination of the Commonwealth's first witness and fashioning a resolution to the dispute, where the judge's course of action did not include any of the formalities attendant on a plea of guilty or an admission to sufficient facts, and the judge's cursory inquiry whether defense counsel wished to waive their right to a defense did not constitute the probing exchange required to insure that the defendants' waiver was free, knowing, and voluntary; moreover, because the trial had begun but the evidence at the time of the judge's ruling was insufficient to support either defendant's conviction, principles of double jeopardy barred the defendants' retrial. [787-788]

COMPLAINTS received and sworn to in the Pittsfield Division of the District Court Department on April 22, 2000.

The cases were heard by *Alfred A. Barbalunga,* J.

*William W. Adams* for Paul Brady.

*Paul W. Cormier* for Marilyn Coussoule.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

McHUGH, J. After the defendants, Paul Brady and Marilyn Coussoule, waived their rights to a trial by jury on complaints charging them with larceny of property having a value in excess of $250, see G. L. c. 266, § 30, witnesses were sworn and the trial began. The charges arose out of the defendants' alleged removal of an ornate door from a showroom and warehouse they had occupied. Doormakers by trade, the defendants had

---

[1]Commonwealth vs. Marilyn Coussoule.

installed the door when they first occupied the premises. The Commonwealth claimed that they had removed it upon their eviction, replacing it with an ill-fitting door of far less character.

Midway through the direct examination of the building's owner, whom the Commonwealth had called as its first witness, the trial judge interrupted the interrogation to ask whether there were any genuine factual disputes. There followed a discussion of the law of fixtures, with the Commonwealth and the defendants taking different positions about whether the defendants had a right to remove the door and the judge siding generally with the Commonwealth.

After exploring the characteristics and attributes of fixtures for a time, the judge summoned counsel to sidebar, where he told them that he would "like 276.87, sixty days and a thousand dollar restitution," i.e., he desired to resolve the matter by placing the defendants on probation pursuant to G. L. c. 276, § 87, for sixty days conditioned on their paying the building's owner $1,000 in restitution.[2] All counsel said they thought that was a fine idea. At that point, the judge called a recess so that defense counsel could discuss the proposition with the defendants and the assistant district attorney could do likewise with the owner.

Discussions completed, counsel regrouped to announce that they all had agreed on restitution of $750 payable within sixty days. The Commonwealth then stated that it was concerned about the fact that they were in the middle of a trial. The judge, observing that the same thought had occurred to him, produced a solution by saying that "based on what [he had] heard, there are facts sufficient." He continued:

> "I have found that there are facts sufficient, based on the evidence which I have heard so far, to warrant a finding of guilty. I'm not going to enter that finding. I'll just continue it for 60 days. I'll dismiss it in 60 days if the 750 is paid. If not, then I'm going to make a finding, unless you want to put on some more testimony before we leave."

No one evinced any desire to "put on some more testimony"

---

[2]General Laws c. 276, § 87, as amended through St. 1974, c. 614, allows a judge to place a defendant on probation "before trial and before a plea of guilty, or in any case after a finding or verdict of guilty." At that point, however, trial had commenced and there had been no guilty finding.

and both defense counsel explicitly stated, in response to a direct question from the judge, that they were waiving "their" "right for a defense." Thereupon, the judge, addressing the defendants directly for the first time since the jury-waiver colloquy, said:

> "All right. 276.87 to be dismissed upon payment of restitution in the amount of $750. Now, understand that if it's not paid, I've heard enough evidence to warrant a guilty finding. You've waived your right to a defense. And on March 23rd we'll have a sentencing hearing. All right? Should they pay it, there is no finding of any criminal culpability, and the case goes away. All right."[3]

At that point, everyone left.

The defendants next appeared in court on March 26, 2001, without counsel, who were for some reason unavailable that day. The defendants had not paid the restitution, and Coussoule told the judge that they wanted to proceed to trial. The judge responded by saying that everything but the sentencing had been resolved at the prior proceeding. Expressing confusion at that, Coussoule told the judge that although she and Brady had agreed to $750 restitution, the business about facts sufficient first arose after they had discussed restitution with their attorneys and they had never agreed that such facts existed. To that, the judge responded by saying that he could put the case back on the "trial track" if payment were not forthcoming. The specter of a trial prompted the Commonwealth to declare that the trial had already occurred and that they were now gathered for payment of restitution or for the imposition of sentence. At that point, the judge concluded that the presence of counsel was

---

[3]Notwithstanding the express limitations contained in G. L. c. 276, § 87, the Commonwealth, reasoning from *Commonwealth* v. *Norrell*, 423 Mass. 725 (1996), which held that § 87 does not permit a posttrial continuance without a finding over the Commonwealth's objection, urges that the statute authorizes a continuance without a finding after trial but before an adjudication of guilt if, as in this case, the Commonwealth agrees. We have some doubts about that. We do not decide the point, however, because even if § 87 may be used in that fashion, it cannot be so used in a case like this one where there is neither a valid admission to sufficient facts nor a trial constitutionally capable of supporting a conviction. See discussion, *infra*.

essential, and he continued the matter for several days until counsel could appear.

Everyone appeared on March 29, 2001. The judge announced that the matter was "on for sentencing" because the restitution had not been paid. The assistant district attorney agreed. Brady's attorney said that some issues had arisen about the extent to which the parties' intent played a role in determining whether a tenant was permitted to remove an object when vacating the premises. But "[w]e walked away with an agreement," said the judge, referring to the first proceeding and making an assertion that counsel accepted. Then, Coussoule's attorney announced that he had no recollection of the judge finding sufficient facts. The judge asserted that he had no doubts on that score, whereupon the attorney said that he wished to consult with Coussoule. Evidently sensing the onset of chaos, the judge answered the request by proclaiming:

> "Well, I'm going to resolve it right now. I'm going to enter a guilty finding, 15 days in the House of Correction, suspended with probation until May 29th; condition of probation, restitution in the amount of $750. They either pay it or they go to jail for 15 days and that takes care of it."

It is from those judgments that the defendants appeal.[4]

Clearly evident is the benevolent objective of the judge's action. The difficulty arises from the path he took in attempting to reach that objective. That path did not include any of the important formalities attendant on a plea of guilty to the charge or an admission to sufficient facts, formalities designed to insure that the plea or admission was made freely, knowingly, and voluntarily. *Boykin* v. *Alabama*, 395 U.S. 238, 242 (1969). *Commonwealth* v. *Duquette*, 386 Mass. 834, 845-846 (1982). *Commonwealth* v. *Fernandes*, 390 Mass. 714, 715-716 (1984). Mass. R.Crim.P. 12(a)(2), 378 Mass. 866 (1979). The Commonwealth does not argue otherwise. Nor did the judge's cursory inquiry

---

[4]The defendants paid the restitution by the deadline and their probation terminated. Given the adjudication of guilt, however, there is no suggestion of mootness. See *Commonwealth* v. *Christian*, 46 Mass. App. Ct. 477, 479-480, *S.C.*, 429 Mass. 1022 (1999); *Commonwealth* v. *Streeter*, 50 Mass. App. Ct. 128, 130-131 (2000).

about whether counsel wished to waive their "right to a defense" constitute the "probing exchange" required to insure that a defendant's "surrender[] in gross [of] the basic constitutional protections afforded to a person accused of crime," including the right to testify and to cross-examine adverse witnesses, and that the waiver is likewise free, knowing, and voluntary. *Commonwealth* v. *Babcock*, 25 Mass. App. Ct. 688, 691-692 (1988). The result, then, was neither a plea nor a trial constitutionally capable of supporting a conviction. See generally *Commonwealth* v. *Orben*, 53 Mass. App. Ct. 700, 706-707 (2002). Accordingly, the judgments must be reversed. Moreover, because the trial had begun but the evidence at the time of the judge's ruling was insufficient to support either defendant's conviction,[5] principles of double jeopardy bar the defendants' retrial. See *Commonwealth* v. *Cardenuto*, 406 Mass. 450, 457 (1990); *Kater* v. *Commonwealth*, 421 Mass. 17, 19 (1995).

As noted, the judge's efforts were clearly directed at producing a sensible result in what was essentially a criminalized civil dispute. But the proceeding's criminal character carried with it the potential for substantial loss of personal liberty and significant collateral consequences. Consequently, the criminal complaints triggered important constitutional guarantees and the procedures carefully designed to support them. Those procedures cannot be ignored even in support of desirable goals.

> *Judgments reversed.*
>
> *Findings set aside.*
>
> *Judgments for the defendants.*

---

[5]At the time the testimony stopped, the evidence permitted the judge to conclude beyond a reasonable doubt that the door had been removed and that, in a mediation held in connection with eviction proceedings, the defendants had agreed to leave it in place after their departure. See generally *Stone* v. *Livingston*, 222 Mass. 192, 195-196 (1915); *Southern Mass. Broadcasters, Inc.* v. *Duchaine*, 26 Mass. App. Ct. 497, 498-499 (1988). Even viewed in the light most favorable to the Commonwealth, however, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), and even if the evidence, so viewed, is capable of supporting an inference that either Brady or Coussoule removed the door, it neither supports a conclusion beyond a reasonable doubt that they engaged in a joint venture to do so nor a conclusion that one rather than the other did so acting alone. See generally *Commonwealth* v. *Eramo*, 377 Mass. 912, 913 (1979).