## Commonwealth vs. Amenhotep Smith.

No. 07-P-446.

Suffolk. February 8, 2008. - July 3, 2008.

Present: Kafker, Trainor, & Sikora, JJ.

*Search and Seizure,* Administrative inspection, Student. *Constitutional Law,* Search and seizure.

A Superior Court judge properly denied the criminal defendant's motion to suppress evidence of a handgun and ammunition that a school administrator found in the defendant student's jacket, where the administrator's warrantless search was reasonable based on an accumulation of articulable facts, including the defendant's evasion of the school's front door metal detectors, his failure to follow his usual practice of dropping his belongings in the administrator's office, and the defendant's presence in an unauthorized area; and where the search was conducted in a way that was reasonably related to possible concealment of a weapon. [178-182]

Indictments found and returned in the Superior Court Department on March 10, 2004.

A pretrial motion to suppress evidence was heard by *Jeffrey A. Locke*, J., and the cases were tried before *Diane M. Kottmyer*, J.

*Jane E. Ross* for the defendant.

*Christine D. Salmon* (*John P. Zanini*, Assistant District Attorney, with her) for the Commonwealth.

Trainor, J. This case presents the question whether a public school administrator may search a student based on that student's violation of a school rule and of procedures that were intended to secure a safe learning environment within the school. On appeal, the defendant argues that his motion to suppress the firearm and ammunition that were discovered as a result of the search, improperly was denied because the public school administrator lacked the required basis to justify the search. We hold that, in the circumstances of this case, the warrantless search of the student was reasonable under both the Fourth Amendment to the

United States Constitution and art. 14 of the Massachusetts Declaration of Rights.

*Facts.* The motion judge found the following relevant facts, which were supported by the evidence presented at the motion hearing. See *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004) (motion judge's findings of fact accepted absent clear error).

Assistant headmaster Miguel Prieto, the senior disciplinarian at Brighton High School, monitors the arrival of students at the front doors of the school each morning during the prescribed arrival hours of between 6:45 A.M. and 8:00 A.M. The front doors are the only authorized entrance, as they are equipped with a metal detection system. Prieto specifically remembered that, while monitoring the front doors, he did not see the defendant arrive the morning of the incident, February 13, 2004.[1] The defendant and Prieto have an arrangement where the defendant drops his belongings in Prieto's office at the start of each school day.[2] The defendant failed to follow this practice on the day of the incident.

At approximately 9:00 A.M., a school administrator found the defendant in an "unauthorized area" on the third floor of the school and brought him to an office to perform an administrative search. Two school administrators and two school police officers were in the office at the time, and when the defendant resisted the search, they summonsed Prieto because of his good relationship with the defendant. When Prieto arrived, he was informed that the defendant had been in an unauthorized area that morning and also that, the previous day, the defendant had been sent home and told, "[I]f you leave here you can't come back without a

---

[1]We point out an important footnote in the motion judge's written decision regarding Prieto's testimony. Despite the large number of students (1,300) entering through these front doors each morning, the motion judge accepted Prieto's testimony that he had not seen the defendant enter through the front doors that day. Prieto's specific recollection was credited based on his past familiarity and involvement with the defendant.

[2]We praise the school and Prieto for their work. Prieto testified about his "excellent relationship" with the defendant, who is nicknamed "Ahmen" and has a history of disciplinary problems, including, as the motion judge found, being "chronically tardy or absent from classes." The record shows that their arrangement of having the defendant drop his bag and his jacket in Prieto's office has cultivated a relationship where the defendant trusts leaving his belongings in Prieto's office rather than his locker and Prieto is assured that the defendant is attending a full day of school.

parent.''[3] The defendant did not bring a parent with him to school on February 13, 2004, thereby failing to abide by this order. Everyone except Prieto and the defendant then left the office. While encouraging the defendant to permit a search, Prieto took the defendant's jacket, which he noted was heavy, and found a .380 caliber handgun in a pocket. Prieto called for the school police, who entered the office, retrieved the firearm, and arrested the defendant.

Three administrative directives govern administrative searches within the Boston public schools, all of which were admitted as exhibits during the motion hearing. The Boston public schools code of discipline (code) requires that each school establish written, school-based rules of conduct and procedures to include, among other issues, searches and seizures. The code also sets forth "Rights of Students" which include a right not to be searched except by designated school administrators based on reasonable cause. Section 7.9.2 of Brighton High School's school-based rules, which were published in the 2003-2004 student handbook, states that "[s]tudents that are found in the hallway 10 minutes after the second bell rings and without a pass [are] in violation of this rule." The section of the handbook entitled "Student Searches" further provides notice that students are subject to search based on reasonable cause to suspect violations of the code.

*Motion to suppress.* The defendant filed a motion to suppress the firearm and ammunition found in his jacket. During the hearing on the motion, the judge heard testimony from Prieto, school police Officer Brian James, and the defendant's father. The judge also considered documentary evidence, including the school's student handbook, the code, Boston public schools' student search policy, and a memorandum of agreement between the Boston public schools and the Boston police department.

Following the hearing, the judge issued a memorandum of decision and order denying the defendant's motion to suppress the evidence. In his findings, the motion judge determined that the search was justified based on three factors: the defendant's violation of a school rule by his presence in the hallway during class; his violation of a school rule by his failure to enter the

---

[3]The Commonwealth takes the position that the event the previous day constituted a suspension.

building through the authorized entrance, namely, the front doors, which are secured with metal detectors, during specific arrival hours; and his failure to follow an arranged plan of dropping his belongings in Prieto's office at the start of the school day. The defendant subsequently was convicted by a Superior Court jury of unlawful possession of a firearm, G. L. c. 269, § 10(*a*); and unlawful possession of ammunition, G. L. c. 269, § 10(*h*). This appeal ensued.

*Discussion.* "In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error. . . . We will, however, independently review the correctness of the judge's application of constitutional principles to the facts found." *Commonwealth* v. *Lawrence L.*, 439 Mass. 817, 820-821 (2003), quoting from *Commonwealth* v. *Molina*, 439 Mass. 206, 208 (2003).

It is well settled that the Fourth Amendment's prohibition of unreasonable searches and seizures applies to searches conducted by public school administrators. The Supreme Judicial Court has acknowledged that "notwithstanding the legitimate goal of school administrators to maintain a safe learning environment, students continue to have a legitimate expectation of privacy in their persons and in the items they bring to school." *Commonwealth* v. *Damian D.*, 434 Mass. 725, 727 (2001), citing *New Jersey* v. *T.L.O.*, 469 U.S. 325, 353 (1985). In order to achieve a balance between these two equally legitimate needs and expectations, "[i]t is evident that the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject. The warrant requirement, in particular, is unsuited to the school environment: requiring a teacher to obtain a warrant before searching a child suspected of an infraction of school rules (or of the criminal law) would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools. Just as we have in other cases dispensed with the warrant requirement when 'the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search,' *Camara* v. *Municipal Court*, 387 U.S. [523, 532-533 (1967)], we hold today that school officials need not obtain a warrant before searching a student who is under their authority." *T.L.O.*, *supra* at 340. Not only did the United States Supreme Court conclude in

*T.L.O.* that obtaining a warrant was impractical in a school setting, it also determined that the level of suspicion required to justify a warrantless search should be modified within the school context. *Ibid.* Ordinarily, even a search that may be conducted without a warrant nevertheless would require a basis of probable cause to believe that a crime had been committed. *Ibid.* See, e.g., *Almeida-Sanchez* v. *United States*, 413 U.S. 266, 273 (1973); *Commonwealth* v. *Hernandez*, 448 Mass. 711, 715 (2007). The Court has observed, however, that the essence of the Fourth Amendment is the requirement that searches and seizures be reasonable, and while "both the concept of probable cause and the requirement of a warrant bear on the reasonableness of a search, . . . in certain limited circumstances neither is required." *Almeida-Sanchez* v. *United States*, *supra* at 277 (Powell, J., concurring). The *T.L.O.* Court went on to conclude that accommodating students' privacy interests with the substantial need of school administrators to maintain order and a safe learning environment did not require that searches be based on probable cause to believe that a student had violated or was violating the law. *T.L.O.*, *supra* at 340-342. "Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *Id.* at 341.

This totality of the circumstances test determines the reasonableness of a search by a two-step process. First, it must be determined if the search was justified at its inception. *Terry* v. *Ohio*, 392 U.S. 1, 20-22 (1968). "In ordinary circumstances, a search will be justified at its inception 'when there are reasonable grounds [reasonable suspicion] that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.' " *Damian D.*, 434 Mass. at 728, quoting from *T.L.O.*, *supra* at 342. Reasonable suspicion cannot be based on an "inchoate and unparticularized suspicion or 'hunch,' *Terry* v. *Ohio*, [*supra*] at 27; rather it [is] the sort of 'common-sense conclusio[n] about human behavior' upon which 'practical people' — including government officials — are entitled to rely. *United States* v. *Cortez*, 449 U.S. 411, 418 (1981) . . . [T]he requirement of reasonable suspicion is not a requirement of absolute certainty: 'sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. . . .' *Hill* v. *California*, 401 U.S. 797, 804 (1971)." *T.L.O.*, *supra* at 346.

Second, if a search is justified at its inception, it must next be determined if it was limited in scope to those measures "reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342.

The defendant argues, however, that art. 14 requires a stricter standard than the *T.L.O.* standard under the Fourth Amendment, and he relies on recent decisions involving warrantless searches in the public school context that have left the application of art. 14 in those circumstances unanswered. See *Commonwealth* v. *Carey*, 407 Mass. 528, 531 n.3 (1990); *Commonwealth* v. *Snyder*, 413 Mass. 521, 528-529 (1992); *Damian D.*, 434 Mass. at 728 n.2. It is well established that "in some circumstances, art. 14 affords greater protection against arbitrary government action" than the Fourth Amendment. *Jenkins* v. *Chief Justice of the Dist. Ct. Dept.*, 416 Mass. 221, 229 n.16 (1993). However, "[w]here a search of persons entering a public place is necessary to protect a sensitive facility from a real danger of violence, an 'administrative search' without a warrant may be justified." *Commonwealth* v. *Harris*, 383 Mass. 655, 657 (1981). Any such search must be no more intrusive than is necessary, it cannot be arbitrary, and it must be conducted for purposes other than gathering evidence for criminal prosecutions. *Ibid.* For instance, the Supreme Judicial Court recently has reiterated "that area-entry inspections at court house entrances, for safety and security purposes, are permissible without a warrant or individualized suspicion of wrongdoing or danger." *Commonwealth* v. *Roland R.*, 448 Mass. 278, 281 (2007). The court reasoned that those persons desiring to enter a courthouse have notice of, and implicitly demonstrate their consent to, such a search before entering the building. *Ibid.*

Similarly, students wishing to enter Brighton High School have notice of and must consent to a similar kind of administrative search. It is clear that the required daily entrance procedures at the school, including specified entrance times, the use of a single entrance, and passage through a metal detector, are employed to prevent, either by way of deterrence or confiscation, the importation of weapons or other dangerous materials into the school building. This limited intrusiveness is appropriate and consistent with the safety and security requirements of a school building

and an educational environment, and it satisfies the reasonableness requirement of both art. 14 and the Fourth Amendment.

The defendant further contends that the judge should have suppressed the firearm and the ammunition because, based on *Damian D., supra* at 729-731, the school administrators lacked reasonable suspicion to search him as there was no nexus between the school's rule of unauthorized presence in the hallway and the purpose of the search. The defendant further complains that the motion judge improperly considered rule violations in addition to the defendant's presence in an unauthorized area, the latter of which was the sole reason provided by the school administrators to search the defendant.

The judge was correct in concluding that the search of the defendant was both reasonable at its inception and limited in scope to an extent "reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342. At the time Prieto searched the defendant, Prieto was aware that the defendant had not entered the building through the metal detectors, thereby avoiding the standard administrative search, and had avoided leaving his belongings in Prieto's office, as was the usual practice. In addition, Prieto was informed of the incident from the previous day, where the defendant had been told not to return to school unless accompanied by a parent. Furthermore, Prieto was aware of the defendant's presence in an unauthorized area, which Prieto knew violated school rules. The knowledge of all these circumstances created a reasonable suspicion that the defendant was in possession of contraband of some type, which could pose a safety risk to himself and to others in and around the school building.

We agree with the defendant that neither his physical appearance nor a tip from an outside source suggests his use or possession of contraband in school. See *Commonwealth* v. *Carey*, 407 Mass. at 535-536 (search justified based on school administrators' preexisting knowledge of defendant's earlier brawl and two students' eyewitness report of gun in defendant's hands); *Commonwealth* v. *Snyder*, 413 Mass. at 523, 527-530 (search justified based on tip from student to teacher that defendant had offered him marijuana and shown him video cassette case con-

taining three bags of marijuana); *Commonwealth* v. *Lawrence L.*, 439 Mass. at 823-824 (search justified based on odor of marijuana "reeking off of [the defendant]" and knowledge of defendant's prior possession of marijuana). See also *Damian D.*, 434 Mass. at 729 n.3, and cases cited. The defendant's conduct, and attendant circumstances, however, distinguish this case from *Damian D.*, *supra* ("it is undisputed that the only basis for the search was Damian's truant behavior . . . . There was no testimony at the motion hearing that [his] physical appearance or conduct suggested his use or possession of contraband, or that school officials had received information from any source that Damian was in possession . . . of contraband in school"). The defendant was not searched out of "pure speculation," *id.* at 730, but rather the search was justified at its inception based on an accumulation of articulable facts, including the defendant's evasion of the front door metal detectors, his failure to follow his usual practice of dropping his belongings in Prieto's office, and the defendant's presence in an unauthorized area.

The facts known to Prieto reasonably would lead a person to conclude that the defendant was concealing a weapon or some other contraband, and he conducted the search in a way that was reasonably related to possible concealment of a weapon. Prieto limited his search to the defendant's jacket and did not even conduct a patfrisk of the defendant. We conclude, therefore, that Prieto's search was reasonable in the circumstances, and the motion judge correctly ruled that the evidence found in the defendant's jacket need not be suppressed.

*Judgments affirmed.*