## COMMONWEALTH *vs.* EMANUEL G. MONTEIRO.

No. 05-P-775.

Plymouth. May 4, 2009. - September 28, 2009.

Present: KAFKER, SMITH, & SIKORA, JJ.

*Firearms. Constitutional Law,* Search and seizure, Stop and frisk. *Search and Seizure,* Student, Reasonable suspicion. *Practice, Criminal,* Waiver of trial by jury, Stipulation.

A District Court judge properly denied the criminal defendant's pretrial motion to suppress evidence of a firearm seized by police officers after a frisk conducted at the defendant's high school, where information supplied to a teacher at the high school by a student, and then relayed by the teacher to a police officer, provided reasonable suspicion to justify the frisk, in that the student based his report on his own observations of the defendant possessing a firearm inside the high school, the transmittal of the report through the teacher did not negate its reliability, and the defendant could not lawfully have possessed a firearm inside the high school. [282-286]

At the jury-waived trial of complaints charging the defendant with unlicensed possession of a firearm and possession of a firearm without a firearm identification card, the District Court judge's colloquy failed to warn the defendant adequately of the rights he waived by trial on stipulated evidence, and consequently, the trial was not constitutionally capable of supporting convictions. [286-289]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on April 4, 2003.

A pretrial motion to suppress evidence was heard by *James F.X. Dinneen,* J., and the case was heard by *David G. Nagle,* J.

*Sarah E. Dolven* for the defendant.

*Laurie S. Yeshulas,* Assistant District Attorney, for the Commonwealth.

SIKORA, J. After a jury-waived trial on stipulated evidence, a District Court judge found the defendant guilty of unlicensed possession of a firearm (in violation of G. L. c. 269, § 10[*a*]), and possession of a firearm without a firearm identification card

(in violation of G. L. c. 269, § 10[*h*] [as in effect prior to St. 2006, c. 48, § 6]), and not guilty of receipt of stolen property with a value over $250 (in violation of G. L. c. 266, § 60). The defendant appeals upon claims of (1) wrongful denial of his motion to suppress the firearm, and (2) failure to conduct an adequate colloquy prior to the trial on stipulated evidence. We conclude that the motion judge correctly denied the motion to suppress the firearm. However, we conclude also that the colloquy of the trial judge was inadequate, and therefore we reverse the judgments.

*Background.* At the time of his arrest, the defendant was a seventeen year old student at Brockton High School (high school). One of his fellow students informed a teacher that another student had brought a gun to the high school. The teacher relayed that information, and the description provided by the student, to a Brockton police officer stationed inside the high school. With the assistance of two school employees, the officer and his superior located the defendant inside the high school. The officer frisked the defendant, extracted a handgun from the defendant's pocket, and then arrested him. After his arrest, the defendant filed a motion to suppress the firearm. A District Court judge conducted an evidentiary hearing and by findings and rulings from the bench denied the motion.[1]

On the day of trial, defense counsel informed the trial judge (who had not served as the motion judge) that the defendant would stipulate to the truth of the narrative in the police report and to the operability of the firearm. Defense counsel stated also that the defendant would waive his right to trial by jury. According to defense counsel, the defendant wanted to proceed in that manner, rather than plead guilty, so that he could appeal the denial of the motion to suppress. The judge conducted a jury waiver colloquy and warned the defendant of the potential immigration consequences of a conviction. The trial consisted solely of admission of the police report in evidence and the stipulation that the firearm worked. The judge imposed concurrent one-year sentences on each of the firearm charges.

---

[1]The defendant had moved also to suppress his statements to the officers after their discovery of the firearm. At the end of the hearing, the motion judge did not decide whether to suppress the defendant's statements. About a month later, he issued a memorandum and order in which he suppressed one of the defendant's statements. That ruling is not at issue here.

*Discussion.* 1. *Motion to suppress firearm.* The motion judge found the following facts. They have the support of ample evidence presented at the motion hearing. See *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004) (absent clear error, we accept motion judge's findings of fact). We supplement those findings with uncontested testimony from the hearing. See *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007), *S.C.*, 450 Mass. 818 (2008) ("courts may supplement a judge's finding of facts if the evidence is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony"), and cases cited.

On April 3, 2003, at approximately 10:30 A.M., a student approached a teacher (George Harrington) inside the high school. Harrington had served at the high school for approximately thirty years. He knew the student from contact on a daily basis. The student told Harrington that he had seen a fellow student with a gun inside the high school. He said that the student's name began with an "M" and that he was a Cape Verdean male of about seventeen years of age with braided hair. He reported also that the student was dressed in a red and black striped shirt and blue jeans.

Harrington relayed the information to Brockton police Officer David Vaughn on duty inside the high school. Officer Vaughn had been stationed at the high school for four years and was familiar with Harrington. That officer shared the information with his superior also on duty at the high school. The officers walked through the high school and looked unsuccessfully for a person fitting the description. At approximately 12:30 P.M., they went to the assistant housemaster of the red school (an apparent subdivision of the high school physical plant and population) to report the information. The officers relayed the description of the student to the assistant housemaster and to a teacher in the assistant housemaster's office. After they heard the description of the student, both the assistant housemaster and the teacher said that it sounded like the defendant, whom they referred to as "Manny Monteiro." They told the officers that the defendant was in the cafeteria. The officers asked the teacher to retrieve the defendant.

The officers were able to see into the cafeteria from the assistant housemaster's office and, out of the 200 to 300 students

in the cafeteria at that time, only the defendant fit the description given by the student. The teacher approached the defendant and asked him to step out of the cafeteria and into a hallway. The officers met the defendant in the hallway. One of the officers pat frisked the defendant and found a handgun in the pocket of his pants. At the time of his encounter with the officers, the defendant had braided hair and wore blue jeans and a red and black striped shirt.

"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. at 646, quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). "[P]olice must have 'reasonable suspicion' that [a] person has committed, is committing, or is about to commit a crime" in order to justify a police investigatory stop under the Fourth Amendment to the United States Constitution or art. 14 of the Declaration of Rights of the Massachusetts Constitution. *Commonwealth* v. *Costa*, 448 Mass. 510, 514 (2007), quoting from *Commonwealth* v. *Lyons*, 409 Mass. 16, 18-19 (1990). Reasonable suspicion "must be based on specific, articulable facts and reasonable inferences drawn therefrom. A hunch will not suffice." *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984). See *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968). "[I]f the police conduct an investigatory stop based on an informant's tip, our evaluation of the tip's indicia of reliability will be focused on the informant's reliability and his or her basis of knowledge." *Commonwealth* v. *Lyons*, *supra* at 19. "Because the standard is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible." *Ibid.*

The defendant argues that the student informant did not have a sufficient basis of knowledge to provide the officers with a reasonable suspicion that the defendant had committed or was committing a crime. The officers' stop and frisk of the defendant was an investigatory stop which required the support of reasonable suspicion. See *Commonwealth* v. *Costa*, *supra* at 514 (under Federal and State Constitutions, investigatory stops must have support of reasonable suspicion). Although the stop and frisk occurred inside a school, the less stringent standard applicable to

searches within schools performed by school officials does not govern here, because a police officer performed the search. See *New Jersey* v. *T.L.O.*, 469 U.S. 325, 340-341 & n.7 (1985) (warrant requirement "unsuited to the school environment," and reasonableness under totality of circumstances, rather than probable cause, justifies warrantless searches by school officials not acting as agents of law enforcement); *Commonwealth* v. *Lawrence L.*, 439 Mass. 817, 820 (2003) (noting that "[i]n the school environment . . . the typical requirements of warrant and probable cause are relaxed when a school official conducts a search of a student"); *Commonwealth* v. *Smith*, 72 Mass. App. Ct. 175, 181-182 (2008) (school official's warrantless search of student's belongings justified by reasonable suspicion). Therefore, the question is whether the information supplied by the student to Harrington, and then relayed by Harrington to the officer, provided reasonable suspicion to justify the patfrisk of the defendant. To answer that question we must consider the basis of the student's knowledge.[2] See *Commonwealth* v. *Lyons*, 409 Mass. at 19.

The student informant based his report on his own observations. The judge found that the student told Harrington that he had *seen* another student with a gun. The student gave a detailed description of the appearance of the student with the gun, including his hairstyle, his clothes of the day, and the first letter of his nickname. Of the 200 to 300 students whom the officers observed in the cafeteria, only the defendant fit that description. We conclude that the student informant had a sufficient basis of knowledge to supply the officers with a reasonable suspicion that the defendant had possession of a firearm inside of the high school. Compare

---

[2]The defendant does not contest the motion judge's determination that the student informant was not anonymous and was reliable. Therefore, we do not consider it. We note, however, that Harrington knew the student informant and that the officers easily could have learned the student's identity. We agree with the motion judge that the student was not an anonymous informant and that his known identity weighs in favor of his veracity. See *Commonwealth* v. *Costa*, 448 Mass. at 516-517 (unidentified informant who provided information to police over telephone after learning that her call would be recorded and that police had her telephone number was more reliable than anonymous informant); *Commonwealth* v. *Love*, 56 Mass. App. Ct. 229, 232-235 (2002) (informant sufficiently reliable where he provided information in person to State police officer who did not record his name but recorded license plate number of vehicle in which he rode). See also *Commonwealth* v. *Alfonso A.*, 438 Mass. 372, 376 (2003), citing *Commonwealth* v. *Love, supra*, with approval.

*Commonwealth* v. *Alfonso A.*, 438 Mass. 372, 374 (2003) (informant had sufficient basis of knowledge from his observations, and amount of detail he provided was "consistent with personal observation, not mere recitation of a casual rumor"). Although the student informant's knowledge resulted solely from his observation of the firearm earlier that day, that observation was enough to support a reasonable suspicion that the defendant possessed a firearm. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 300 (1991) (basis of knowledge requirement satisfied because "informants' knowledge was based on personal observations"); *Commonwealth* v. *Rodriguez*, 49 Mass. App. Ct. 664, 668 (2000) ("It is well established that an informant's basis of knowledge may be satisfied simply by his or her personal observation of drugs in the place sought to be searched . . ."). In this instance, a direct observation provided a very specific description.

The transmittal of the student informant's report through Harrington to the officer does not negate its reliability. The officer knew Harrington; Harrington had taught at the high school for thirty years. His basis of knowledge depended entirely on that of the student. Because the student's report was reliable, and Harrington's credibility well established, his relay of that report to the officer was reliable also.

In these circumstances, a reasonable suspicion that the defendant possessed a firearm at the high school was equivalent to a reasonable suspicion that the defendant was committing a crime. The defendant was seventeen at the time of these events. He was not old enough to be in licensed possession of a firearm. See G. L. c. 140, § 131(*d*)(iv). Furthermore, even a person licensed to carry a firearm could not have possessed a firearm lawfully inside the high school without the permission of school authorities. See G. L. c. 269, § 10(*j*). Therefore, we conclude that the stop of the defendant had the support of reasonable suspicion and that the motion judge properly denied the motion to suppress the firearm.

The nature of the suspected crime and its location abundantly supported the frisk. They indicated the presence of a firearm in a public high school at which the attendance of students is mandatory, concentrated, and vulnerable. The circumstances required the protection of the police, students, faculty, and administrators

from danger. See *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968); *Commonwealth* v. *Almeida*, 373 Mass. 266, 271 (1977).[3]

2. *Trial on stipulated evidence.* On the day of trial, the judge asked the prosecutor whether the Commonwealth's evidence would consist solely of the police report. The prosecutor told the judge that he intended to submit the case "on the police report." Defense counsel informed the judge that the defendant would stipulate that the firearm was operational. In addition, he informed the judge that the defendant intended to waive his right to trial by jury. To explain the stipulations and waiver of jury trial, defense counsel said: "[The defendant] has read the police report . . . which contains the relevant facts concerning this particular incident. He's willing to stipulate that those would be the facts that you would hear at a jury waived trial. The purpose of this is to conduct a jury waive[d] trial so in the event that [the defendant] . . . wants to appeal [the motion judge's] decision on the motion to suppress later on . . . he would do so." Defense counsel stated further that the defendant "realize[d] that there [were] sufficient facts" to support convictions on the firearm charges, and that he would "receiv[e] the year minimum mandatory" sentence. Finally, defense counsel stated, "I just want the court and the record to be clear that I did speak to [the defendant] about his rights to a jury trial. He knows those rights . . . . He further understands that by doing it this way, he's still preserving his appellate right."

The prosecutor then asked the judge to conduct a jury waiver colloquy "to make sure that it's on the record that [the defendant] is apprised of all [his] rights." Before the judge conducted a colloquy, though, he heard the parties' arguments on sentencing. The prosecutor argued for two and one-half years of incarceration. Defense counsel requested one year of confinement on the unlicensed possession charge, a "guilty file" on the other firearm charge, and a finding of not guilty on the receipt of stolen property charge. He stated that the defendant was "standing . . . in front of [the judge] essentially admitting to [the

---

[3]As in the case of *Commonwealth* v. *Smith*, 72 Mass. App. Ct. at 176 n.2 (detection and seizure of handgun and ammunition from student inside large public high school), the personnel inside the school building here acted with commendable sense and speed.

charges]. . . . [H]e's throwing himself on the mercy of the court realizing his judgment . . . was absolutely less than perfect and lacked all kinds of . . . reason." In response to counsel's arguments, the judge stated that he would impose the mandatory minimum sentence of one year.

The judge then conducted a jury waiver colloquy, and the defendant asserted that he understood his rights. In regard to the stipulated evidence, the judge asked the defendant whether he understood that the judge would not hear "the evidence in the usual forum where there's testimony given and direct examination by the prosecution and presentation of the evidence and cross-examination by your lawyer." He reminded the defendant that the prosecution "submitted a police report as being the facts in the case," and warned him that "I make the judgment from the police report." The defendant's reply indicated that he understood the proposed procedure. The judge then asked the defendant whether he understood that a conviction could result in deportation and other immigration consequences, and the defendant stated that he understood. Finally, the judge asked whether the defendant still wished to proceed in the proposed manner despite the stated risks. The defendant responded affirmatively.

At the judge's request, the prosecutor moved for trial. The judge admitted the police report in evidence without any objection from defense counsel, and the parties stipulated that the handgun was a working firearm. Both parties then rested, and the judge found the defendant guilty of the firearm charges and not guilty of receipt of stolen property. The judge sentenced the defendant as promised.[4]

The defendant argues that the colloquy conducted by the trial judge failed to warn him adequately of the rights waived by trial on stipulated evidence. We addressed this issue in *Commonwealth* v. *Castillo*, 66 Mass. App. Ct. 34, 37 (2006): "A trial based on stipulated evidence is not 'a trial constitutionally capable of supporting a conviction,' *Commonwealth* v. *Brady*, 59 Mass. App. Ct. 784, 788 (2003), unless it appears on the record that there is an inquiry whether the defendant understands the significance of such a trial as opposed to a customary trial,

---

[4]The defendant pleaded guilty to another criminal matter immediately after the judge sentenced him on the charges at issue here. The judge conducted a full guilty plea colloquy.

see *Commonwealth* v. *Stevens*, 379 Mass. 772, 776 (1980); that the defendant is informed of the rights the defendant has surrendered, including the right to confrontation, the right to cross-examine witnesses, and the right to testify, among others; and that the defendant freely, knowingly and voluntarily waives those rights. *Commonwealth* v. *Babcock*, 25 Mass. App. Ct. [688,] 691-692 [1988]. *Commonwealth* v. *Brady*, 59 Mass. App. Ct. at 787-788.'' We remain convinced that such an inquiry serves both the fairness and the accuracy of the result. We examine the present events to determine whether the trial judge informed the defendant of the rights surrendered when he agreed to a trial on stipulated evidence, and whether the defendant intelligently and voluntarily waived those rights.

The trial judge warned the defendant that, under the chosen procedure, his lawyer would not present evidence or cross-examine witnesses. However, the warning did not specifically inform the defendant of his right to cross-examination or his right to call his own witnesses. It did not mention the right to confrontation or the right not to incriminate himself. See *Commonwealth* v. *Babcock*, 25 Mass. App. Ct. at 691-692. Consequently, the trial was not "constitutionally capable of supporting a conviction." *Commonwealth* v. *Brady*, 59 Mass. App. Ct. at 788. The inadequacy of the colloquy makes it unnecessary to consider whether the defendant freely, knowingly, and voluntarily waived those rights. He could not intelligently waive rights of which he remained unwarned. Our reasoning does not mean to slight the Commonwealth's argument that the defendant's agreement to the admission of the stipulated information (in lieu of a typical guilty plea) gave him the benefit of a chance to win the suppression issue on appeal. However, the case law against abbreviated colloquies for stipulated admission of decisive evidence is strong and prohibitive.

A defendant's proposal of a bench trial upon stipulated evidence may present a prospect of efficiency to trial judges burdened by heavy workloads. However, without the caution of a detailed but efficient colloquy itemizing the rights surrendered and confirming the intelligence and voluntariness of their relinquishment, the trial exposes a conviction to recantation and to subsequent proceedings far more onerous than the original administration of the warning. "It invites appeals of the most hairsplitting sort and

cannot be justified to save court time." *Commonwealth* v. *Babcock*, 25 Mass. App. Ct. at 691. "The trial judge should, without eliciting from the defendant a plea of guilty which the defendant is disinclined to offer, question the defendant whether he recognizes that 1) he is entitled to confront witnesses against him; 2) the Commonwealth has the burden of proving the offense beyond a reasonable doubt; 3) he may be giving up the right not to incriminate himself; 4) he is giving up the right to cross-examine; and 5) that he is acknowledging evidence likely to lead to a finding of guilty." *Ibid.*, citing *Boykin* v. *Alabama*, 395 U.S. 238, 243 (1969); *Henderson* v. *Morgan*, 426 U.S. 637, 644-645 (1976); *Commonwealth* v. *Duquette*, 386 Mass. 834, 841-847 (1982); *Commonwealth* v. *Carter*, 396 Mass. 234, 236 (1985). To batten down the waiver, the itemized warning should serve as standard operating procedure for jury-waived trials upon stipulated evidence.[5] It assures fairness to the defendant and prevents wasteful posttrial motions and appeals of the kind predicted by the *Babcock* decision more than twenty years ago.

*Conclusion.* For the foregoing reasons, we conclude that the motion judge properly denied the defendant's motion to suppress the firearm. It will be admissible at any subsequent retrial of the charges. We conclude also that the colloquy prior to the jury-waived trial on stipulated evidence did not adequately inform the defendant of the rights relinquished by his choice of that procedure. We reverse the judgments and remand the case to the District Court for a new trial or other proceedings consistent with this opinion.

*So ordered.*

---

[5]It consists of elements of the guilty plea colloquy thoroughly familiar to judges in their criminal sessions. See Smith, Criminal Practice and Procedure § 23.55 (3d ed. 2007) (summarizing colloquy).