COMMONWEALTH *vs.* JASON P. WHITEHEAD.

No. 12-P-1970.

Barnstable. October 11, 2013. - March 25, 2014.

Present: CYPHER, KATZMANN, & MALDONADO, JJ.

*Firearms. Constitutional Law,* Search and seizure, Reasonable suspicion. *Search and Seizure,* Threshold police inquiry, Protective frisk, Reasonable suspicion. *Threshold Police Inquiry. Evidence,* Firearm. *Practice, Criminal,* Motion to suppress.

A District Court judge properly denied the criminal defendant's pretrial motion to suppress evidence discovered during a warrantless search of his backpack, where the police officer involved had a reasonable suspicion that the defendant might be armed and present a danger to the officer and others, in that the officer observed the presence of three types of ammunition and a hunting knife in the defendant's vehicle (located on a college campus) and threatening decals on the vehicle, and the defendant approached the officer with an aggressive posture while wearing camouflage attire; in that the defendant's claim — that his possession of a firearm identification card permitting him to possess the ammunition caused the officer's reasonable suspicion to continue the search of the defendant's backpack to vanish — failed under the terms of G. L. c. 269, § 10(*j*), which prohibits the possession of ammunition or a firearm on school grounds without the permission of school authorities, regardless of a license to possess such ammunition or firearm; and in that the defendant's sudden statement that the backpack contained a loaded weapon, after the defendant had received Miranda warnings, confirmed the officer's concern for his own safety and the safety of the college community, and the search was limited to looking for weapons that could pose such a danger. [137-141]

COMPLAINT received and sworn to in the Barnstable Division of the District Court Department on March 20, 2012.

A pretrial motion to suppress evidence was heard by *Joan E. Lynch,* J., and the cases were heard by *W. James O'Neill,* J.

*Nicholas Grefe* for the defendant.

*Elizabeth Anne Sweeney,* Assistant District Attorney, for the Commonwealth.

KATZMANN, J. Following a jury-waived trial, a District Court

judge found the defendant guilty of carrying a firearm without a license, G. L. c. 269, § 10(*a*), and carrying a firearm on school grounds, G. L. c. 269, § 10(*j*). The defendant now appeals from the denial of his motion to suppress a firearm, together with all the evidence that was obtained as a result of a police officer's patfrisk and search of the backpack the defendant had strapped to his back.[1] The issue before us is whether the motion judge correctly found that the police officer's patfrisk and search of the backpack were permissible, where the officer observed several types of ammunition inside the defendant's vehicle, which was parked on a college campus and which bore threatening decals, and where the defendant was wearing camouflage attire. We affirm.

*Background.* On March 19, 2012, at 10:00 A.M., police were dispatched to Cape Cod Community College based on a report that security officers had observed ammunition in plain view inside a locked Jeep in a college parking lot. Officer Kevin Donovan of the Barnstable police department responded and met two security officers at the lot. The security officers identified the vehicle, which had decals attached to it, including "Kill 'Em All Let God Sort It Out" and "Sniper No Need to Run — You'll Only Die Tired." Additionally, there was a sign hanging from the vehicle's rearview mirror that said "Funeral." Officer Donovan looked through the closed window of the vehicle and observed in the console area three rounds of ammunition for a semiautomatic weapon — a nine millimeter round, a .38 caliber round, and an empty nine millimeter shell casing — and a camping knife. After seeing the ammunition, Officer Donovan became that concerned there was someone on campus with weapons. The college was open, and classes were being conducted. By checking the license plate, Officer Donovan learned that the vehicle was registered to Brenda Kelly.

Soon after Officer Donovan arrived at the scene, the defendant, a student at the school, walked down a hill towards the vehicle. The defendant was wearing Army camouflage pants, black boots, a dark black sweatshirt, and a camouflage hat, and he had a black backpack strapped to his back. The officer testified that when the defendant was about thirty to fifty yards

---

[1]The defendant acknowledges that the patfrisk of his body was justified.

away, the defendant yelled, "Can I help you?" Officer Donovan asked if he was the owner of the car. The defendant approached the officer in an "aggressive posture" and answered that he was the owner. In response to the officer's question whether the defendant had a firearm on him, the defendant replied, "No, are you supposed to be asking me that question?" As a result of the ammunition and the defendant's aggressive posture, the officer patted down the defendant for weapons. He found no weapons or contraband but found the defendant's firearm identification (FID) card in his wallet, indicating that he was allowed to carry ammunition. The officer placed the defendant's backpack on the lid of the cruiser's trunk and then advised the defendant of the Miranda rights. When the officer said he was going to place the defendant in the backseat of the cruiser while he patted down the bag, the defendant spontaneously said, "Wait, there's a loaded gun in the bag." The officer placed the defendant in the backseat, closed the door, and searched the backpack. He found a black Smith & Wesson .380 semiautomatic handgun loaded with eighteen bullets, an ankle-style holster, and two additional magazines. Officer Donovan seized the gun, magazines, and bullets and placed the defendant under arrest.

The defendant was arraigned on March 20, 2012, with one count of carrying a firearm without a license, one count of carrying a firearm on school grounds, and one count of possession of a firearm without an FID card. After an evidentiary hearing, at which Officer Donovan was the sole witness, the motion judge denied the defendant's motion to suppress the items obtained as a result of the officer's backpack search. The judge found:

> "Officer Donovan was justified in conducting a pat-frisk of the defendant and the backpack based on a reasonable apprehension that the defendant might be armed. The location, an open college campus, heightened concerns for his safety and the safety of others who were on campus. The defendant's appearance and aggressive posture contributed to Officer Donovan's legitimate concern. Although the officer was more focused on the ammunition, the language on the decals affixed to the vehicle is an additional factor that would warrant an individual in the officer's position to fear that his safety or the safety of others was in jeopardy."

After a jury-waived trial before a different judge, the trial judge found the defendant guilty of carrying a firearm without a license and carrying a firearm on school grounds. The Commonwealth entered a nolle prosequi on the charge of possession of a firearm without an FID card. The defendant filed a timely notice of appeal. In his appeal, the defendant only challenges the motion judge's denial of the motion to suppress and does not make any claims concerning the bench trial.

*Discussion.* The defendant argues the evidence obtained as a result of Officer Donovan's search of the backpack should have been suppressed because Officer Donovan exceeded the scope of an initially legitimate *Terry*-type[2] patfrisk of his person in searching the defendant's backpack after the basis for his concern should have been dispelled. We disagree and conclude that the motion judge was correct in determining that Officer Donovan was justified in conducting a *Terry*-type patfrisk and search of the defendant's backpack.

In reviewing a determination on a motion to suppress, "we accept the [motion] judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' The judge determines the weight and credibility of the testimony. '[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004) (citations omitted).

"In 'stop and frisk' cases our inquiry is two-fold: first, whether the initiation of the investigation by the police was permissible in the circumstances, and, second, whether the scope of the search was justified by the circumstances." *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). The purpose of a *Terry*-type stop and frisk is not to discover evidence of a crime, but to protect police and the public and allow police officers to pursue their investigation without fear of violence. *Terry* v. *Ohio*, 392 U.S. 1, 27, 29 (1968). See *Commonwealth* v. *Almeida*, 373 Mass. 266, 270-271 (1977). An officer is entitled to take reasonable precautions, *Commonwealth* v. *Ferrara*, 376 Mass. 502,

---

[2]*Terry* v. *Ohio*, 392 U.S. 1 (1968).

505 (1978), and may pat frisk the suspect for weapons if, under the totality of the circumstances, a reasonably prudent person would be warranted in believing the suspect might be armed and present a danger to the officer or others. *Terry* v. *Ohio*, *supra* at 27. See *Commonwealth* v. *Silva*, 366 Mass. at 406 ("While the officer need not be absolutely certain that the individual is armed, the basis for his acts must lie in a reasonable belief that his safety or that of others is at stake"). "The process [of determining whether an officer had reasonable suspicion] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same — and so are law enforcement officers." *United States* v. *Cortez*, 449 U.S. 411, 418 (1981). But the reasonable belief that officers or others are in danger requires that there be specific and articulable facts that the individual being frisked is armed and dangerous. *Commonwealth* v. *Silva*, 366 Mass. at 405-406.

While the defendant acknowledges that the stop and the body frisk were justified, he argues that the search of the backpack exceeded the scope of a permissible search under *Terry* v. *Ohio*, *supra*. The defendant argues that after the officer found no weapons in his body frisk, and after the officer found the defendant's FID card, which indicated that he was allowed to carry ammunition in a locked car, there was no basis for a continuing suspicion to justify a further patfrisk and search of the backpack. We disagree.

First, regardless whether the defendant possessed an FID card, there were sufficient articulable facts to create a reasonable suspicion for the patfrisk and search of the backpack. In the wake of school shootings such as occurred at Columbine, Colorado; Santee, California; and Newtown, Connecticut, "we take judicial notice of the actual and potential violence in . . . schools," *Commonwealth* v. *Milo M.*, 433 Mass. 149, 156 (2001), and note the heightened sensitivity of school officials to signs that a student may have brought guns onto school property and might embark on a shooting rampage. See generally G.S. Katzmann (ed.), Securing Our Children's Future: New Approaches

to Juvenile Justice and Youth Violence 1-27, 386-414 (2002). The officer observed the presence of three types of ammunition and a hunting knife openly displayed in the defendant's vehicle, the defendant's aggressive posture, his camouflage attire, and the threatening decals on his vehicle. When taken in combination, these facts justify a frisk of both the defendant's person and backpack because a reasonable person in the officer's position would fear for his own safety and that of others on a college campus. Indeed, the presence of ammunition alone gave rise to a reasonable inference that a firearm was also present. See *Commonwealth* v. *Kitchings*, 40 Mass. App. Ct. 591, 598 (1996) ("the loaded ammunition clip in the van . . . conveyed the clear message that one or more guns were probably in the van"). Based on the presence of the ammunition and the reasonable inference that a gun might be nearby, it was reasonable for Officer Donovan to suspect that his safety and the safety of others at the college were in danger.

As *Terry* instructs, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry* v. *Ohio*, 392 U.S. at 27. "The nature of the suspected crime and its location abundantly supported the frisk. . . . The circumstances required the protection of the police, students, faculty, and administrators from danger." *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. 280, 285-286 (2009). See *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 n.7 (1997) (a frisk is justified when a reasonable person in the officer's position would fear for his or her own safety). Even when there is ambiguity about the risk, police do not need to accept the risk of ambiguity and to gamble with safety. *Commonwealth* v. *Johnson*, 454 Mass. 159, 164 (2009).

The same factors justifying the patfrisk of the defendant's person justified a patdown of the backpack he carried. A rule prohibiting the search of the bag would allow the defendant to leave the scene with a weapon that could be used against the officer as soon as the defendant regained possession of the bag. See *Commonwealth* v. *Pagan*, 440 Mass. 62, 72-73 (2003).

Quite apart from judicial notice, it is significant that the

Legislature, by statute, has codified its concern that students, faculty, and staff in elementary schools, secondary schools, and universities be provided with enhanced protection against guns and gun-related violence. It has increased the burden on a defendant who would seek to avoid prosecution for an ammunition or firearm offense and removed a defense that might otherwise be available in a different setting. Thus, even a person licensed to possess ammunition (or a firearm) cannot possess it on school grounds without the permission of school authorities. See *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. at 285. General Laws c. 269, § 10(*j*), as appearing in St. 1989, c. 648, provides:

> "Whoever, not being a law enforcement officer, and notwithstanding any license obtained by him under the provisions of chapter one hundred and forty, carries on his person a firearm as hereinafter defined, loaded or unloaded or other dangerous weapon in any building or on the grounds of any elementary or secondary school, college or university without the written authorization of the board or officer in charge of such elementary or secondary school, college or university shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than one year, or both. For the purpose of this paragraph, 'firearm' shall mean any pistol, revolver, rifle or smoothbore arm from which a shot, bullet or pellet can be discharged by whatever means."

In short, the defendant's claim — that once the police officer determined that he had an FID card permitting him to possess ammunition, reasonable suspicion to continue the search of his backpack vanished — fails under the terms of the statute. A license to possess ammunition (or a firearm) is not a defense to prosecution under § 10(*j*) — lacking the permission of school authorities, a suspect would still be subject to prosecution. See *Commonwealth* v. *Sayers*, 438 Mass. 238, 240 (2002).

Finally, as Officer Donovan testified and as the motion judge found, he read the defendant the Miranda rights after he pat frisked him for weapons. As has been noted, after he removed the backpack from the defendant and advised him that he was going to pat frisk it, the defendant suddenly said, "Wait, there

is a loaded gun in there." The defendant's admission to having a loaded gun inside his backpack on a college campus prior to the officer's search quite obviously confirmed the validity of the officer's concern for his own safety and the safety of the college community.[3] In sum, while the defendant asserts the contrary, the police actions here were eminently reasonable under the circumstances. See *Commonwealth* v. *Flemming*, 76 Mass. App. Ct. 632, 634-637 (2010). Here, the officer did only what was necessary to ensure that the defendant did not have access to a weapon in his backpack, threatening the safety of both the officer and of the college community. Since the officer's search was not a generalized search for evidence but rather was limited to looking for weapons that could pose a danger to the officer and the public, the search did not cross the threshold of an impermissible search. See *Commonwealth* v. *Santos*, 65 Mass. App. Ct. 122, 125 (2005) ("A search of the automobile for evidence as opposed to weapons is not authorized by *Terry* principles"). Compare *Commonwealth* v. *Greenwood*, 78 Mass. App. Ct. 611, 616-617, cert. denied, 132 S. Ct. 327 (2011) (court reversed the denial of the defendant's motion to suppress the fruits of a bag search because the officers did not reasonably believe that the defendant was armed and dangerous). Therefore, pat frisking and then searching the backpack for weapons to dispel the danger was not excessive in scope, see *Commonwealth* v. *Silva*, 366 Mass. at 408; *Commonwealth* v. *Flemming*, 76 Mass. App. Ct. at 635, 637, and the motion judge was correct in denying the defendant's motion to suppress.[4]

*Judgments affirmed.*

---

[3]The Commonwealth does not contend, and we do not address, the argument that the search was sustainable on the alternate ground that it was incident to a lawful arrest. "The search may precede the formal arrest so long as probable cause to arrest exists independently of the results of the search, and where there is also probable cause to believe that the object searched contains evidence of the crime for which the defendant is being arrested." *Commonwealth* v. *Greenwood*, 78 Mass. App. Ct. 611, 617, cert. denied, 132 S. Ct. 327 (2011) (citations omitted).

[4]We discern no merit in the defendant's contention that the motion judge ignored critical facts when she determined that Officer Donovan acted reasonably when he searched the defendant's backpack. The judge did not err in her findings of fact or in her ultimate determination based upon them.